UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

MAY 29 2020

PER _____
DEPUTY CLERK

JOSE ROLDAN-QUINONES
(Petitioner)

V.

UNITED STATES OF AMERICA
(Respondent)

Civil Action No.: _____
Crim Action No.: 1:17-CR-00222-001

Petitioner's Memorandum of Law in Support of Motion
to Vacate, Set Aside or Correct Conviction and
Sentence Pursuant to 28 U.S.C. Section 2255;
Claiming Ineffective Asst. of Counsel in Sentencing
Proceedings

Now Comes, Petitioner, Jose Roldan-Quinones, Pro Se and
moves this Honorable Court to Vacate, Set Aside or Correct his
Conviction and sentence under 28 U.S.C. 2255 due to Ineffective
Asst. of Counsel; and Petitioner states as Follows:

## I. BACKGROUND

On or around, Feb. 26th, 2020; Petitioner was sentenced to 120-months
while being Charged with Conspiracy to Distribute Narcotics, In violation
of 21 U.S.C. Sections 841(A)(1), 846, 860 (and in Possession) of 5 Kilogram or
More of Cocaine Base.

The Record shows that, Petitioner violated his Supervised Release when
receiving a New Charge based on his Recent Plea Agreement; yet
based on New Laws (and old) Available to Counsel at sentencing, Petitioner
Could not have plead to an incorrect and unproven Drug amount.

Petitioner has not filed a direct appeal nor a previous 2255 motion. Accordingly, pursuant to 2255 *Habeas Filing;* Petitioner files this timely motion *within* the one (1) year statute of limitations where the rules state the following: *(EVEN UNDER 2255(h)(2)*

The rules pursuant to 28 U.S.C. 2255; does address that an individual can file even past the one (1) year statue of limitations when or on the grounds that he is "actually innocent" of a particular charge (or enhancement illegally derived) and in the interest of brevity and judicial economy, when a correction of an illegal sentence must be further adjudicated such as:

1) To prevent a complete miscarriage of Justice that would result from allowing a unconstitutional sentence to stand (U.S. v. Cabey) 429 F.3d 93 (2005) (Also see), (U.S. Maybeck) 23 F.3d 888 (1994), (U.S. v. Mikalajunas) 186 F.3d 490, 495 (1999)

2) A new claim raised could not have been raised in a prior motion; nor presented previously because the issue raised was not available at the time of sentencing; ((2255)(h)(2))

3) A change in the law that directly effect the guideline range of his sentence or incorrectly created resulting in an improper classification (U.S. v. Whitley), 737 F.App x 147, 148-49 (4th Cir. 2018); (Also see) (U.S. v. McCollum), 885 F.3d 300, 307-09 (2018); or

4) Newly discovered evidence that if proven and viewed in the light of the evidence as a whole would be sufficent to establish by clear and convincing evidence; that no reasonable fact finder would have found the movant guilty of the offense.

PETITIONER (AS OF NEW LAWS) is NOW CHALLENGING COUNT(S) __1__, CITING HE WAS HARSHLY AND ILLEGALLY SENTENCED TO AN INCORRECT GUIDELINES RANGE BY WAY OF MISADVICE PROVIDED BY COUNSEL TO SIGN A PLEA THAT PETITIONER COULD NOT (NOR SHOULD NOT) HAD PLEAD TO. PETITIONER WAS ULTIMATELY SENTENCED TO 120-MONTHS; WITH __5__ YEARS OF SUPERVISED RELEASE; WHEN PETITIONER WHEN CORRECTLY SENTENCED BASED ON THE CORRECT DRUG AMOUNT NOT SUPPORTED BY THE EVIDENCE PROFFERED BY THE GOV'T AT THE TIME OF THE PLEA AGREEMENT SIGNED. ACCORDINGLY, PETITIONER HAS FILED A TIMELY 2255 (F)(1) PETITION!

## II. PRELIMINARY STATEMENT

Petitioner acknowledges that within his plea agreement ., he waived certain appeallate rights; however, Petitioner cannot waive his constitutional rights when there is a violation of his 5th amendment rights to a fair due process to be sentenced most favorable consistent to new laws and Supreme Court rulings.

As recently as February 21, 2018, Supreme Court decided in favor in the case (Class v. United States), 138 S.Ct. 798, 200 L.Ed.2d 37; 2018 US Lexis 1378; 86 U.S.L.W. 4055; 27 FLA.L.Weekly Fed.5.60 No. 16-424; that a valid guilty plea forgoes not only a fair trial, but also other accompanying constitutional guarantees. While those simultaneously relinquished rights include the privilege against compulsor self-incrimination, the jury trial right, and the right to confront accusers, they do not include a waiver of the privileges which exist beyond the confines of the trial.

By its own terms, Fed.Rule.Crim.P.11(a)(2) itself does not say whether it sets forth the exclusive procedure for a defendant to preserve a constitutional claim following a guilty plea. At the same time, the drafters' notes acknowledge that the United States Supreme Court has held that certain kinds of constitutional objections may be raised after a plea of guilty. The notes then specifically refer to the Menna-Blackledge doctrine. They add that the Rule should not

be interpreted as either broadening or narrowing that doctrine or as establishing procedures for its application. And the notes state that Rule 11(a)(2) has no application to the kinds of constitutional objections that may be raised under that doctrine.

Furthering, the court found that a guilty plea, by itself does not bar a federal criminal defendant from challenging the constitutionality of his statute of conviction on direct appeal or collateral proceedings.

This holding flows directly from this Court's prior decisions. Fifty years ago, in Haynes v. United States, the Court addressed a similar claim challenging the constitutionality of a criminal statute. Justice Harlan's opinion for the Court stated that the defendant's "plea of guilty did not, of course, waive his previous [constitutional] claim." 390 US 85, 87, n.2 88 S.Ct. 722, 19 L.Ed.2d 923, 1968-1 C.B. 615. That [200 L.Ed.2d 40] clear statement reflects an understanding of the nature of guilty pleas that stretches, in broad outline, nearly 150 years. Subsequent decisions have elaborated upon it. In Blackledge v. Perry, 417 US 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, the

violations,'" related to events (such as grand jury proceedings) that "'occur[r] prior to the entry of the guilty plea.'" Id., at 30, 94 S.Ct. 2098, 40 L.ed.2d 628 (quoting Tollett v. Henderson), 411 US 258, 266-267, 93 S.Ct. 1602, 36 L.Ed.2d 235). However, where the claim implicates "the very power of the State" to prosecute the defendant, [138 S.Ct. 801] a guilty plea cannot by itself bar it. 417 U.S. at 30, 94 S.Ct. 2098, 40 L.Ed.2d 628. Likewise, in Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195, the Court held that because the defendant's claim was that "the State may not convict [2018 US LEXIS 3] [him] no matter how validly his factual guilt is established," his "guilty plea, therefore, [did] not bar the claim." Id, at 63, n.2d, 96 S.Ct. 241, 46 L.Ed.2d 19. In more recent years, the Court has reaffirmed the Menna-Blackledge doctrine's basic teaching that "'a plea of guilty to a charge does not waive a claim that --judged on its face--the charge is one which the State may not constitutionally prosecute..'" United States v. Broce, 488 US 563, 575, 109 S.Ct. 757, 102 L.Ed.2d 927 (quoting Menna, supra, at 63, n.2 96 S.Ct. 241, 46 L.Ed.2d 19). Pp. ___ - ___, 200, L.Ed.2d, at 42-44..

In this case the Government and Petitioner agreed on a Plea Agreement.

As in (Class v. U.S.), the Government contends that by entering a guilty plea and the court (colloquy) explains the waiver conditions on which Petitioner inherently relinquished his constitutional claims in similar circumstances such as Petitioner as in (Class.)

The Supreme Court's most recent ruling in (Class v. U.S.) puts to rest claims made by the Court that Petitioner waived his rights to appeal per his plea agreement and sentencing colloquy. This decision is a harmful plain error and a violation of Petitioner's constitutional rights.

Petitioner files this timely motion pursuant to (CLASS) and Supreme Court decisions in which Petitioner cannot waive his appeals rights and thus Petitioner files this Habeas Corpus petition. Period!

III STATEMENT OF FACTS

STRAIGHT FORWARD, Petitioner ARGUES, that DRUG Amounts Applied to him At sentencing WAS in FACT not supported by ANY REAL PHYSICAL EVIDENCE. Although Petitioner Plead to 5 Kilograms or more of COCAINE, the Gov't ADMITED At sentencing, that there WAS A total of 1480 GRAMS of COCAINE FOUND AND Attributed to Petitioner (AND nothing Close to 5 Kilograms.

The Gov't ARGUED other "Relevant Conduct" should be considered; stating that, "THERE WERE several Boxes (3) or more, that Got BY them". However, Counsel should have brought to the Court's Attention that; there WAS A CHANGE in the Law/Rulings - "LANGUAGE For statues of Convictions Pursuant to 841(A)(1) AND 846/860; On what the Court cannot consider beyond the statue concerning Relevant COR Actual conduct to determine A DRUG QUANTITY not PRESENTED before A JURY of his PEERS. (SEE U.S. V. MAUPIN) AND alike CASES in FAVOR (SEE Attach #1 - Full opinion of MAUPIN)

Subsequently the Govt's enhancement and charges being illegal would mean that Petitioner was sentenced on a calculation of appl- icable guideline range used that was in error. Such is the case that on April 20, 2016 (Molina - Martinez v. U.S.) 136, S.Ct 1338, 1344 the Court determined that the district court had errored and should have sentenced the defendant to a lower guideline range because the Court found that a sentencing procedure which begins with incorrect calculated guideline range level is infected with "Plain" error and requires resentencing even where there has been failure to object (by way of plea) to the Court's guideline calculation. (In further support also see.... (Haskell v. Superintendent Green SCI, 2017 BL 266640 3rd Cir. No. 15-3427 (2017); Harris v. U.S., No. 17-3341 (3rd Cir.) (2018).      Also - (See Rosales-- Mireles v. U.S. 138 S.Ct. No. 1897 (2018); Also, U.S. v. Antonucci, 667 Fed. Appx. 121, 2016 U.S. App. Lexis 11396).

Accordingly, defense counsel advised that prior to sentencing, all witnesses proffered by the Govt for claims of relative conduct would be personally interviewed (or cross examined) to clear up any false claims previously made by co-defendants

cooperating to save themselves. Unfortunately, this did not occur and thus left the Court with devastating impression of Petitioner. Defense counsel failed to provide the basic professional norms to interview (or at worse cross examine) individuals who would claim testimony as a safety valve to a lesser sentence.

The record clearly provides proof that defense counsel objected to many of the gov'ts claims for enhancements, along with relative conduct in the gov'ts windfall argument. However, defense counsel offered "NO" FRAP or case laws to support its claims, thus proving to be unprepared. Period!

Recently, two cases address (Just to name a few here) matters involving incorrect PSR reports as in;

In United States v. Pauling, the Second Circuit affirmed the District Court's order granting the defendant's motion to set aside his conviction for Conspiracy to Distribute or Possess with Intent to Distribute 100 Grams or More of Heroin. The Court concluded that the District Court had correctly found that the evidence at trial was insufficient to establish the quantity element of the offense (100 grams or more), and therefore entered judgment of conviction instead to a lesser-included offense that did not have a mandatory minimum sentence.

Defendant was convicted of being a member of a drug conspiracy with an individual named "Low." It was uncontested at trial that defendant Pauling and Low conspired to distribute 89 grams of heroin based on four transactions documented by the government. However, defendant Pauling argued that the government had not proved that the conspiracy included at least 11 more grams beyond a reasonable doubt, a quantity that would trigger the mandatory minimum sentence.

The government, in turn, relied on two different theories to demonstrate the necessary, additional grams: First, the government argued that it had established these additional grams based on a July 3 phone call in which a customer ordered 14 grams from Pauling. These 14 grams were already included in the 89, but the government asserted that another 14 grams could be "inferred" from this particular phone call because the customer stated that he wanted the "same thing as last time." Second, the government argued that the jury could "infer" the additional 11 grams from the course of dealings between defendant Pauling and Low, which indicated that they might have engaged in other similar transactions.

The trial court and the appeals Court rejected both of the government's arguments in turn. In short, the Court concluded that, while both of these theories might support "reasoned speculation" that the additional 11 grams of heroin had been involved in the conspiracy, neither one allowed for a sufficient inference that would establish the inclusion of 11 or more additional grams beyond a reasonable doubt.

Judge Chin's careful, searching analysis of the facts is a reminder that, while the defendant's burden to overturn a verdict based on insufficient evidence is a high one, so too is the burden that the government must carry to prove every element of its case beyond a reasonable doubt. (SEE ATTach # 6)

Ground 1: Petitioner qualifies for relief, pursuant to (U.S. v. Maupin) No. 19-6817; stating that an individual cannot be sentenced outside of the actual statue of conviction thus eliminating claims of relevant (OR ACTUAL) conduct to be used for enhancement purposes.

Of great leagl consequences, in (U.S. v. Maupin) No. 19-6817; speaks to what the Supreme Court makes clear that, a covered offense is determined by the Statute of Conviction, not "actual conduct" or "relevant conduct". This ruling the Govt conceded to in the Fourth Circuit (See United States Motion to Remand, (E.C.F. No. 26)

Next; turning to (Biglow v. U.S.) (See attachment 5 the full opinion of the biglow case similar to Petitioner's claims where the district court on further review made particularized findings that Biglow was only responsible for 192 grams of drugs much less than the 500 grams necessary to support the mandatory minimum; he plead to.

Petitioner claims for ineffective assistance of counsel erroneous and incorrect advice regarding what availability of sentencing reductions as well as; to what restriction Petitioner would plea to concerning relative conduct; due to defense counsel asserted that the govt could not argue for any additional drug amount above 1 Kilo or more grams of COCAINE base offense. Implicityly, the District Court's plea colloquy does not serve to remedy counsel's incorrect advice, and Petitioner argues the grounds that he was harmfully prejudiced against and would not have entered a plea, but for the incorrect and unprepared advice of defense counsel.

As in the third circuit case in (US v. Bui), 795 F.3d 363; 2015 U.S. App. LEXIS 13548 No. 11-3795 (Aug 4, 2015) the court decided that;

When addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer. Courts have identified potential sentencing exposure as an important factor in the decisionmaking process, stating that knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. In order to provide this necessary advice, counsel is required to know the U.S. Sentencing Guidelines Manual and the relevant U.S. Circuit Court precedent.

An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland.

(OTHER SUPPORTIVE CASES BELOW)

(Alleyne V. United States), 133 S.Ct. 2151 (2013).

(United States v. Figueroa Labrada),' 720 F.3d 1258, 1265 (10th Cir.) 2013.

(United States v. Asch), 207 F.3d 1238, 1245 n.7 (10th Cir.) 2000

(Wessel v. City of Albuquerque), 463 F.3d 1138, 1143 (10th Cir. 2006)

(United States v. Webb) 98 F.3d 585, 587 (10th cir. 1996).

(United States v. Arias Santos), 39 F.3d 1070 (10th cir 1994).

(United States v. Patterson), 713 F.3d 1237, 1249 (10th Cir. 2013)
see generally USSG 1B1.3 comment, (N.2) providing several examples
applying this rule.)

(United States v. Cassius), 777 F.3d 1093, 1094 (10th Cir. 2014)
**** (UNITED STATES v. BEAMUS) No. 19-5533 (6th Cir.) Nov 21, 2019 (RECENT)

In Sum, Petitioner was sentenced on incorrect information and
adopted by the Court, within the PSR report, that led to an inco-
rrect and illegal sentence and due to 6th amendment violation given
on misadvice by Defense Counsel, thus violating Petitioner's 5th am-
endment to fair and correct due process as a matter of law.

Ground 2: Petitioner qualifes for relief, Pursuant to (U.S. v. Sterling) No. 18-2974 (8th Cir.); because the information contained in the PSR did not have "suffecent indicia of reliability to support its probable accuracy leading to a 5th Amendment violation. (DRUG AMOUNT UNPROVEN AND NOT FOUND TO SUPPORT THE COURT'S DETERMINATION AT SENTENCING) (SEE Attach #3)

As of 2019; Court's have vastly agreed as found in (U.S. v. Sterling) No.18-2974 (8th Cir.) (Nov 1, 2019), similar to Petitioner's new claims, that his PSR report based on information contained in the PSR did not have <u>suffecent indicia of reliability</u> to support its probable accuracy. The record is clear that Petitioner's indictment had no drug quantity amount; and the Court used written statements (NOW DEEMED TO BE ILLEGAL ON ITS FACE) to come to a higher drug amount; Petitioner was misadvised to sign a plea of 280 grams or more pursuant a 846 violation on unproven drug weight on unquantified claims that no one testified to prior to or at sentencing.

The Court without a doubt adopted an illegal finding; much as in the case of (Sterling) such as;

1) Unproven drug quantity, (OF 5 KiloGRAms or more)
2) Illegally used relevant conduct claims on unproven written (unsubstantiated) statements.
3) Disputable accurances between the parties.
4) Claims of control buys on witnesses and nothing further pertaining to evidence to support such claims (AND ALIKE)

In conclusion, Petitioner's case is in line with Sterling where the Court stated "It is the Govt's burden to prove the quantity of drugs a person is responsible for by a perponderance of the evidence and the Govt's sole argument that the amount stipulated (By co- defendents by informants claiming relevant conduct, without testimony from those informants at sentencing hearings to establish quantity and foreseeability, cannot stand and must be viewed as mere speculation by the Govt. The Court reversed and remanded (Sterling's) case for resentencing, as should this Court due to the fact that like Sterling, this Court adopted a PSR and plea agreement not su-

supported by a drug quantity or amount given to Petitioner on the
mere speculation (See Attachment     - the Sterling Decision)

GROUND **3:**   Petitioner qualifies to be sentenced according to the
              National sentencing disparities on correct and similar
              Guidelines of others with the same charges (AND ALIKE)

   The Court's multiple errors cumulatively speaking, is a com-
plete failure of the Petitioner's Fifth and Sixth Amendment mandate
for both accurate sentencing and effective assistance of counsel.

   It must not be understated, when imposing a Federal Sentence,
District Courts must consider "the need to avoid unwarranted sentence
disparities amoung Defendants with similar records who have been found
guilty of similar conduct." 18 U.S.C §3553 (A)(6). (Kimbrough v. U.S.
552 U.S. 85, 108 (2007). Additionally, this statute requires a sen-
tencing Court to consider nationwide sentencing disparities under
procedural reasonableness. It is without question Petitioner was sen-
tenced outside of nationwide reasonableness and guidelines.. Had the
Court researched this at the time of the Petitioner's sentence, he
would have received a much lesser sentence than   years.
U.S. v. Titchell, 261 F.3d 348, 2001 Appx. LEXIS 18480 (3rd Cir.2001).

   Of great importance; a review of the discrepancies that arose (at sentencing
and/or resentencing) when the sentencing courts did not look at the actual
participants in the crime (because others had not been sentenced yet) in determining
role reduction, regardless if co-defendants not having similar records, applies
to Petitioner in comparison to other co-defendants, where in summary is as
such:

Some courts "assessed" a defendant against a hypothetical average participant.
See, e.g. U.S. v. Teeter, 257 F.3d 14, 30-31 (1st Cir. 2001)(writing that
a defendant must demonstrate that he is both less culpable than most other
participants in his crime and also less culpable than the majority of those
within the universe of persons participating in similar crimes). In the Ninth
and Seventh Circuits, however, the "relevant comparison" was between the defendant
and other actual participants in the same crime. See, U.S.S.G.App.C.Amend.
794; U.S. v. Rojas-Millan, 234 F.3d 464, 473 (9th Cir. 2000); U.S. v. Davis,
938 F.2d 744, 747 (7th Cir. 1991).

Accordingly, in U.S. v. Gonzales, 680 Fed. Appx. 46; 2017 U.S.
App. Lexis 3235, No. 15-3097-CR (Feb 23, 2017), the court vacated
and remanded for further proceedings when Gonzalez plead to a certain
guideline range pursuant to 11(C)(1)(C) agreement, to his applicable
guideline should have been and the court changed, without regards
to the Petitioner's agreement thus changing and making a different
calculation. (See Attachment 7 opinion for the Gonzalez case in
full).

The record proves clearly, that Petitioner should have been sentenced to a lower range of the guidelines such as follows:

THE Court STARTED At Level 30 (BASED ON DRUG AMOUNT); NOTE:
this amount BASED on law, should have been lower to start. THE CORRECT
Level should have been Level 24 FOR 1 Kilogram OR MORE of COCAINE;
then A REDUCTION (-3) ACCEPTANCE of RESPONSIBILITY COMES to Level 21,
which falls between the GUIDELINES RANGE of 57-71 months AT
CATEGORY History of IV.

ACCORDING to CITED CASE laws AVAILABLE to Counsel PRIOR to sentencing,
IN FAVOR of Petitioner; Petitioner Guidelines RANGE "MUST" HAVE BEEN
DIFFERENT, AND AS A matter of LAW; Petitioner Could not HAVE PLEAD
to A illegal Guideline RANGE of 100-125 months-Level 27. PERIOD!

In an attempt to give advice by counsel, (harmful as it was)
counsel exhaustively failed (under Strickland); when he advised
without preperation   that Petitioner accepted a plea unknowingly
or unvoluntairly when such findings led to a different out/come,
had he researched pursuant to issues to be considered by the Court
under the §3553 statute; and present a challange (and just objection
stipulated) to the Govt's claims at sentencing.

Petitioner is thus entitled to be correctly (and favorably)
sentenced in line with the correct Guidelines Range and consistant
with the National disparitites of others with similar charges and
Gudieline Range.

## V. CONCLUSION

Numerous courts have varied downward taking this into consideration. See United States v. Hadley, No. 6:06-cr-209-Orl-37KRS (M. Dist Fla. 2019) where the Court varied downward reducing the defendant's life sentence to a term of time served. Varying downward because the guideline range of 360 months was unnecessary to meet the objectives of sentencing. Moreover, the Court found that other Courts have varied downward from guidelines sentence or reduced sentences to time served in the First Step Act context, noting that the defendants prior convictions no longer qualified for 851 or career offender purposes. See also, United States v. Lee, No. 1:08-cr-24-7, 2019 U.S. Dist LEXIS 116724, 2019 WL 3073992 at (W.D. Va July 15, downward to time served from guideline range from 360 to life with career offender designation and §851 enhancement); United States v. Biggs Case No. 05 CR 316, 2019 U.S. Dist Lexis 81509, 2019 WL 2120226 at 3-4* (N.D. Ill. May 15, United States v. Simon, 375 F. Supp 3d at 388-89 (varying downward and reducing sentence to time served); United States v. Mitchel No. 05-110 (EGS) 2019 u.S. Dist LEXIS, 107396, 2019 WL 2647571 at 7-8* (D.D.C, June 27, 2019); United States v. Anthony, Case no. 6:07-cr-8-1 Dist. LEXIS 86590, 2019 WL 2216548, 2019 U.S. at (W.D. VA May 22 United States v. Newton case No. 5:02-cr-30020, 2019 U.S. Dist LEXIS 33356, 2019 WL 1007100 at (W.D. Va Mar. 1, United States v. Foreman case no 1:06-cr-30, 2019 U.S. Dist LEXIS 115862, 2019 WL 3050670 at (W.D. Mich July 12, downward); United States v. Vanburen, case no. 2019 U.S. Dist LEXIS 117842 2019 WL 3082725, at 5-6 (W.D. Va. July 15, 2019)

Petitioner's claims herein is not about withdrawing his plea whatsoever; yet simply to be sentenced to the Correct Guidelines Range. Although, the Gov't may want to claim that had they known, they would have filed an 851 Information Notice, this matter is not about how to give individual's as much time as humanly possible. To the contrary, the Rule of Law is about a fair sentence necessary and not beyond that standard; and again in-line with the law, petitioner cannot plea to what amounts to "GHOST DOPE"; which does not exist anymore.

Pursuant to (U.S. v. Maupin), No. 19-6817; as a matter of statutory construction, the record speaks to what the Supreme Court makes clear that, a covered offense is determined by the Statute of Conviction not "Actual Conduct" or relevant Conduct." This Ruling the Govt conceded to in the Fourth Circuit (See United States Motion to Remand, (E.C.F. No.26).

Thus testimony given by cooperating witness is now deemed illegal and <u>could</u> not have been used to enhance Petitioner at sentencing, because Petitioner was enhanced on what would be now considered relevant conduct of a crime (or supposed actual conduct).

Petitioner plead to 21 U.S.C. 841(a)(1), 841(b)(1)(B) and 846 and <u>similar</u> in <u>Maupin</u> case the court can only sentence Petitioner pursuant to the statute of conviction. Period! If such is the case then, the Court's have decided that relevant conduct not presented to a jury may not be used to enhance a defendant beyond the findings of a jury (See Rosales-Mireles v. U.S. 138 S.Ct. No. 1897 (2018); Also, U.S. v. Antonuccim 667 Fed. Appx 121, 2016 U.S. App. Lexis 11396).

In Sum, the record provides irrefutable proof (evidence) defense counsel's failures effected Petitioner's case from the start causing unexplainable harmful ineffective asst of counsel such as:

1) Misadvise to Petitioner to accept a plea (open in nature) that would allow the Govt to proffer relevant conduct testimony on unproven statements the Court's now deem to be illegal.

2) Failures exposed Petitioner to a higher sentencing guideline range.

3) Counsel's failing to understand the changes in Statue language pursuant to what the Supreme Court determined is a covered offense and defendant's can only be sentenced to the Statue of conviction and <u>NOT</u> actual conduct or relevent conduct.

4) Counsel's failure to appropriately assist the Court on contradictions between the admissions by the Govt on Drug Amounts actually found verses hearsay statements; that lead to an illegal enhanced sentence. And adoptions of a false drug amount determined by the Court.

5) Counsel's failures that allowed the Court to adopt and inc-
orrect PSR report and sufficiently indicia of reliability to
support its probable accuracy.

6) Lack of preperation led the Court to not fully first find
facts pursuant to §3553 statue; causing Petitioner to be sen-
tenced above the national disparity rule and laws (AND ALIKE)

7) COUNSEL'S FAILURES AND NEGLECT LED TO A HARMFUL INCREASING SENTENCING
GUIDELINES RANGE.

8) Counsel's MISADVICE left Petitioner to believe that there was a benefit
to PLEADING to AN UNPROVEN DRUG AMOUNT of 5 KILOGRAMS OR MORE
of COCAINE, that would illegally subject Petitioner to A higher
sentence then what was ACTUALLY PROVEN by the Gov't PRIOR
to SENTENCING.

All in all, Petitioner cites again herein Molina-Martinez, 136
S.Ct. 1338, 1344; where the district court had sentenced the defen-
dant to the bottom of what the district judge thought was the app-
licable Guideline range. However, the court's calculation of the
applicable guideline range was in error - the defendant's guideline
range should have been lower. Even though the resulting sentence -
at the bottom of the erroneous Guideline range - was within the
correct Guideline range, the Supreme Court found that a sentencing
procedure which begins with an incorrectly calculated Guideline
Level is infected with "plain" error, and requires resentencing,
even where there has been failure to object to the court's
guidelines calculation.

issues, Petitioner contends that, cumulatively speaking, there can be no doubt that he was denied a fair trial in violation of the Sixth Amendment's mandate that a defendant is entitled to the effective assistance of counsel. Moreover, both U.S. Supreme Court authorities in Strickland v. Washington and Molina-Martinez have been violated because of counsel's deficient performance causing him to be removed as defense counsel by the court as well as the "plain errors" committed by the court at sentencing.

Under Molina-Martinez, Petitioner is not required to prove any additional facts or provide additional evidence to show that the sentencing errors—where the district court applied the incorrect Guidelines—affected his substantial rights.

Therefore, the Court retains the power to set aside the restitution order. Restitution ordered  by the Court has to relate to the offense charged, and be within the statutory powers of the court and restitution that is outside the statutory powers of the court will be set aside on appeal as "plain" error even if the amount of restitution was stipulated to at sentencing. See, United States v. Behrman, 235 F.3d 1049, 1052-1053 (7th Cir. 2000). An illegal sentence is an illegal sentence!

Also, under the Crime Victims' Rights Statute §3771 (A)(4)(7) it states clearly that a Petitioner has the right to be reasonably heard at any public proceeding in the District Courrt involving release, plea, sentencing, or any parole of relief proceeding. Petitioner has the right to a full and timely proceeding free from unreasonable delay. As a matter of law, and based upon the foregoing undisputed factual and legal issues, there is no doubt Petitioner is entitled, to be heard pursuant to and under this 2255 (F)(1) Habeas Corpus  Motion now presented to this Honorable Court.

## VI. PRAYER FOR RELIEF

THE Petitioner, Jose Roldan-Quinones, Pro Se, Prays that this Honorable Court will "GRANT RELIEF" on this Petition For Habeas Relief Pursuant to 28 U.S.C. Section 2255 to include:

1) VACATION of both his CONVICTION AND sentence, AND

2) ORDER A RESENTENCING Based on the Law favorable to Petitioner, AND issue A Reduction to the APPROPRIATE GUIDELINES RANGE of (57-71) months (from the 120-months imposed INCORRECTLY); AND

3) Reduction of SUPERVISED RELEASE; AND

FOR ANY other Relief DEEMED NECESSARY AND APPROPRIATE in the INTEREST of Justice.

Respectfully Submitted,

DATED: 5/26, 2020

Jose A. Roldan Quinones

Jose Roldan-Quinones, PRO SE
FED No. 31917-069
L.S.C.I. Allenwood-Low
P.O. Box 1000
White Deer, PA 17887

(16)

## AFFIDAVIT

I Hereby Certify that the foregoing facts are true and correct to the best of my knowledge and belief under penalty of perjury as per 28 USC Section 1746.

*Jose A. Roldan Quinones*
JOSE ROLDAN - QUINONES, PRO SE

## CERTIFICATE OF SERVICE

I Hereby Certify that a copy of the foregoing Petition/Motion was mailed on this 26th day of ____May____, 2020, by First Class Mail, postage prepaid to:

Office of the US Attorney
DARRYL Bloom
US District Court Middle District of Pennsylvania
228 walnut street
P.O. Box 983
Harrisburg, PA 17108

*Jose A. Roldan Quinones*
JOSE ROLDAN - QUINONES, PRO SE

ATTACHMENT(S)
(RECENT CASES CITED)

UNITED STATES OF AMERICA, Plaintiff - Appellee v. CLAIBORNE LEMAR MAUPIN, Defendant - Appellant
UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
2019 U.S. App. LEXIS 27180
No. 19-6817
September 9, 2019, Filed

**Editorial Information: Prior History**

{2019 U.S. App. LEXIS 1}(3:04-cr-00047-NKM-18).United States v. Maupin, 2019 U.S. Dist. LEXIS 133943 (W.D. Va., June 3, 2019)

**Counsel**          For United States of America, Plaintiff - Appellee: Jennifer R. Bockhorst, Assistant U. S. Attorney, Office of The United States Attorney, Abingdon, VA.
For Claiborne Lemar Maupin, Defendant - Appellant: Lisa M. Lorish, Office of The Federal Public Defender, Charlottesville, VA; Juval Orisha Scott, Federal Public Defender, Office of The Federal Public Defender, Western District of Virginia, Roanoke, VA.

**Judges:** Judge Wilkinson with the concurrence of Judge King and Judge Harris.

**Opinion**

ORDER

Upon consideration of the government's unopposed motion to remand, the court grants the motion, vacates the district court's order, and remands this case to the district court to consider whether to reduce appellant's sentence under the First Step Act in the exercise of its discretion. The clerk is directed to attach a copy of the motion to remand to this order and transmit a copy of both to the district court.

Entered at the direction of Judge Wilkinson with the concurrence of Judge King and Judge Harris.

**UNITED STATES' MOTION TO REMAND**

The United States of America, by counsel, hereby moves the Court, pursuant to Federal and Local Rule of Appellate Procedure 27, to vacate the order of the district{2019 U.S. App. LEXIS 2} court and remand to that court to determine whether to reduce Maupin's sentence in the exercise of its discretion.

**Factual Background**

**A. Maupin's Conviction**

Claiborne Lemar Maupin pled guilty on April 10, 2006, to Count Three of the Superseding Indictment, participating in a Racketeering Influenced Corrupt Organization (RICO), in violation of 18 U.S.C. §§ 1962(d) and 1963. JA at 68. The charge alleged a RICO conspiracy whose purposes included attempted murder, kidnapping, robbery, and trafficking in cocaine base, heroin, phencyclidine (PCP), and marijuana. JA at 37. The "pattern of racketeering activity" alleged in Count Three "consist[ed] of

CIRHOT                                          1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Attach #1

[among other things] multiple acts involving offenses dealing with the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in controlled substances, indictable as in violation of [18 U.S.C. §§ 841 and 846]." JA at 51.

Maupin's role, as alleged, was to obtain and supply narcotics to other members of the organization to sell at the street level and to serve as an "enforcer" for the organization. JA at 45-46. In the "Notice of Special Findings," Count Three incorporated by reference the first four paragraphs of Count One of the Superseding Indictment, which charged Maupin and others{2019 U.S. App. LEXIS 3} with conspiracy to distribute and possess with intent to distribute 50 grams of cocaine base, 5 kilograms of cocaine hydrochloride, and detectable amounts of heroin, PCP, and marijuana. JA at 19-22, 52. Count One carried a maximum penalty of life imprisonment pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(A), based upon the amounts of cocaine base and cocaine hydrochloride alleged.

Maupin pled guilty pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). JA at 68. As part of the agreement, the United States agreed to dismiss Count One, and the parties agreed the Court should impose a sentence of twenty years. JA at 69.

The maximum penalty for RICO conspiracy is determined by the maximum penalty for the racketeering activity. 18 U.S.C. § 1963(a).1 Where the racketeering activity carries a maximum of life imprisonment, the RICO maximum penalty is also life. 18 U.S.C. § 1963(a). Otherwise, the RICO maximum penalty is 20 years. Id.

The plea agreement and the Presentence Report in this case stated the maximum penalty for Maupin's RICO offense was life{2019 U.S. App. LEXIS 4} imprisonment and a fine of $250,000. JA at 68. The quantity of cocaine base and the quantity of cocaine hydrochloride involved in Maupin's offense each would have triggered the maximum penalty of life imprisonment under 18 U.S.C. § 841(b)(1)(A). However, the plea agreement does not contain any stipulations with regards to the Special Findings. It does not specify to which drugs or to what quantity of drugs Maupin pled-whether it was to 50 grams of cocaine base or 5 kilograms of cocaine hydrochloride, or both. JA at 68-73.

In the Presentence Report, adopted by the sentencing court without change, the only drug for which Maupin was held accountable was cocaine base, suggesting the basis for the plea was Maupin's involvement with cocaine base only. JA at 110. Whereas some defendants stipulated to quantities of cocaine hydrochloride as well as cocaine base, and others stipulated to only marijuana quantities, there is nothing in the factual recitation or the drug weight findings in the Presentence Report that establishes Maupin's involvement with a drug other than cocaine base. JA at 104-110. Maupin was found accountable for more than 1.5 kilograms of cocaine base. JA at 110. He was determined to have a total offense level of 38 and a criminal history category VI, yielding{2019 U.S. App. LEXIS 5} a guideline range of 360 months to life. JA at 118.

Maupin was sentenced on June 29, 2006, in accordance with the plea agreement, to 240 months' imprisonment. JA at 76.

On October 3, 2018, the district court granted Maupin's motion to reduce his sentence under Amendment 782 and *Hughes v. United States*, 138 S. Ct. 1765, 201 L. Ed. 2d 72 (2018), and reduced his sentence to 210 months, the bottom of the current guideline range for an offense involving 1.5 kilograms of cocaine base.

## B. The First Step Act

The First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, was enacted December 21, 2018. Section 404 of the Act permits the sentencing court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence on certain

CIRHOT                                        2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"covered offense[s]" in accordance with the Fair Sentencing Act of 2010, if no such reduction was previously granted. It reads:

> SEC. 404. Application of Fair Sentencing Act.
>
> (a) Definition of covered offense.-In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) Defendants previously sentenced.-A court that imposed a sentence for a covered offense may, on motion of the defendant,**{2019 U.S. App. LEXIS 6}** the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) Limitations.-No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.First Step Act § 404, 132 Stat. 5222.

As is relevant here, Section 2 of the Fair Sentencing Act of 2010 effectively reduced the penalties for offenses involving cocaine base by increasing the threshold cocaine base quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010) ("Fair Sentencing Act"). After the statute's enactment, a violation of 21 U.S.C. § 841(a)(1) must involve at least 280 grams of cocaine base, rather than 50 grams, to trigger the 10 to life**{2019 U.S. App. LEXIS 7}** penalty range of 21 U.S.C. § 841(b)(1)(A), and 28 grams of cocaine base, rather than 5 grams, to trigger the 5 to 40 year penalty range of 21 U.S.C. § 841(b)(1)(B). Section 3 of the Fair Sentence Act of 2010 modified 21 U.S.C. § 844(a) by eliminating the mandatory minimum sentence for simple possession.

## C. First Step Act Proceedings

On February 21, 2019, Maupin filed a motion to reduce his sentence under Section 404(b) of the First Step Act. JA at 81. He reasoned his RICO conviction is a "covered offense" because the maximum penalty was determined by the racketeering activity, which he defined as a drug conspiracy involving more than 50 grams of cocaine base. JA at 83. Because the Fair Sentencing Act reduced the maximum penalty for the racketeering activity to 40 years, he reasoned, he was entitled to a discretionary sentence reduction under the First Step Act. *Id.* He requested a reduction to a sentence of 139 months, a 33% reduction from the bottom of the applicable guideline range and significantly less than the 168 months he had served as of February 3, 2019. JA at 81-82.

The United States filed a Motion to Dismiss on March 12, 2019, arguing that RICO was not a "covered offense" under the First Step Act, because neither Section 2 nor 3 of the Fair Sentencing Act amended the penalties for RICO. JA at 88.

On June 3, 2019, the district court**{2019 U.S. App. LEXIS 8}** denied Maupin's motion, agreeing with the United States that the RICO violation is not a "covered offense":

> [F]or an offense to be a "covered offense" its statutory penalties must have been "modified by section 2 or 3 of the Fair Sentencing Act" . . . The statutory penalties associated with RICO

CIRHOT                                        3

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

simply do not fit that description. *See* 18 U.S.C. § 1963(a) (effective December 1, 2009). Furthermore, it is clear that "Congress intended that a RICO violation be a discrete offense" separate and apart from any predicate offenses, and this Court will treat it accordingly. *United States v. Crosby*, 20 F.3d 480, 484, 305 U.S. App. D.C. 290 (D.C. Cir. 1994) (collecting cases holding the same, including *United States v. Arnoldt*, 947 F.2d 1120, 1125-27 (4th Cir. 1991)).JA at 95. In a footnote, the district court further held that a RICO conspiracy conviction is different from a Section 846 conspiracy. *Id.* at n.1. Section 846 states that a defendant guilty of attempt or conspiracy of a drug offense "shall be subject to the same penalties as prescribed for that offense," and "[t]his creates a clear relationship between section 846 and 21 U.S.C. § 841(b)(1), a relationship that does not exist between 18 U.S.C. § 1963 and 21 U.S.C. § 841(b)(1)." *Id.*

Maupin filed a timely notice of appeal. JA at 97.

<u>Argument</u>

Although the government argued in the district court that Maupin's RICO offense does not qualify as a "covered offense" under Section 404 of the First Step Act, the United States now agrees{2019 U.S. App. LEXIS 9} with Maupin that it does. The United States therefore agrees that the Court should remand this case to the district court to allow that court to consider whether to reduce Maupin's sentence in the exercise of its discretion.

The key question in determining whether a defendant is eligible under Section 404 of the First Step Act is whether the "statutory penalties" for a defendant's "violation of a Federal criminal statute" were modified by Section 2 or 3 of the Fair Sentencing Act. Thus, the court must consider whether the statutory penalties associated with the defendant's violation of a federal criminal statute would have been different had Sections 2 and 3 of the Fair Sentencing Act been in effect. A defendant therefore may be eligible even if he was convicted under a statute other than those directly amended by Sections 2 and 3 of the Fair Sentencing Act. For example, a defendant may be eligible if he was convicted of a cocaine-base offense under 21 U.S.C. § 846 (attempt and conspiracy), so long as the quantity of cocaine base involved in the offense would no longer support the same statutory penalty range.2

The same is true of a defendant convicted under RICO, provided that the defendant's statutory maximum was increased to life as a result{2019 U.S. App. LEXIS 10} of a racketeering activity involving cocaine base that would no longer carry a maximum penalty of life imprisonment. Just as the statutory penalties associated with a violation of Section 846 were "modified by" the Fair Sentencing Act, so too were the statutory penalties associated with certain violations of RICO.

Here, the statutory-maximum penalty for Maupin's RICO offense was set by reference to Maupin's cocaine-base-trafficking racketeering activity. That racketeering activity involved more than 1.5 kilograms of cocaine base-a quantity that would support the same maximum penalty of life imprisonment under Section 841(b)(1)(A) both before and after enactment of the Fair Sentencing Act. Ordinarily, the United States would argue that Maupin is ineligible for a discretionary sentence reduction for that reason. However, the United States did not preserve this alternate argument for finding Maupin ineligible. Accordingly, the only determination remaining for the district court is whether, in its discretion, to reduce Maupin's sentence, which is already within the guideline range currently applicable to his offense.

<u>Position of Counsel</u>

Counsel for Maupin has been contacted and has indicated he has no objection to a remand.{2019 U.S. App. LEXIS 11}

CIRHOT                                           4

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Conclusion

For the foregoing reasons, the United States moves for this Court to vacate the district court's opinion and remand for the district court to consider whether to reduce Maupin's sentence in the exercise of its discretion.

Respectfully submitted,

THOMAS T. CULLEN

United States Attorney

/s/ Jennifer R. Bockhorst

Jennifer Bockhorst

Assistant United States Attorney

Tennessee Bar No. 021395

U.S. Attorney's Office

180 West Main Street, Suite B19

Abingdon, Virginia 24210

276-628-4161

276-628-7399 (fax)

USAVAW.ECFAbingdon@usdoj.gov

**Footnotes**

1

18 U.S.C. § 1963(a) reads, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both . . . .

2

This interpretation of Section 404 comports with Congress's use of the broad phrase "a Federal criminal statute." Congress easily could have limited the reach of Section 404 to the five statutory provisions directly amended by Sections 2 and 3 of the Fair Sentencing Act, but it did not.

CIRHOT                                    5

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

THE SIXTH CIRCUIT FINDS THAT A DEFENDANTS CAREER OFFENDER ENHANCEMENT HAS NO BEARING ON ELIGIBILITY FOR A REDUCTION UNDER THE FIRST STEP ACT

United States v. Beamus, No. 19-5533 (6th Cir. Nov. 21, 2019)

In 2002, a jury convicted Beamus of conspiracy to possess 6.68 grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. 841(b)(1)(B) (2002), as well as several related firearms offenses under 18 U.S.C. 922(g)(1) and 924(c). Beamus was found to have had other prior convictions that ultimately led to the district court determining that he was a career offender under U.S.S.G. 4B1..1.

Under 841(b)(1)(B), Beamus' statutory range of punishment was 5 to 40 years. However, the government had filed an information under 21 U.S.C. 851 which resulted in a statutory minimum sentence of 10 years to life imprisonment. Further the PSR found that Beamus' Guideline range under the crack cocaine Guidelines was 120 to 150 months. But due to the career offender enhancement, Beamus' range was raised to 360 months to life imprisonment. Beamus was sentenced to 420 months. 360 months were for the crack cocaine conspiracy, and 60 months were for another related firearm offense, served consecutively.

After enactment of the First Step Act of 2018, Beamus moved for a reduction based on the retroactive application of the Fair Sentencing Act. But based on his career-offender status under the Guidelines, the district court ruled Beamus was ineligible for FSA relief. According to the Sixth Circuit, this was error, and Beamus' career offender enhancement "has nothing to say about his eligibility for" resentencing.

In coming to its conclusion, the Sixth Circuit noted that the Beamus' statutory punishment range would have been different had he been sentenced after the passage of the Fair Sentencing Act of 2010. Because Beamus was convicted of possessing 6.68 grams of crack cocaine, his offense would fall under 21 U.S.C. 841(b)(1)(C) which carries a statutory range of 0 to 20 years imprisonment. Even with the 851 enhancement, Beamus' range would still be lower than prior to Fair Sentencing Act, at 0 to 30 years instead of 10 to life.

As the court noted, the First Step Act permits a court that sentenced a defendant for an offense for which "the statutory penalties were modified" by the Fair Sentencing Act to "impose a reduced sentence as if" the Fair Sentencing Act were "in effect at the time the covered offense was committed." First Step Act of 2018, 404(a), (b), Pub. L. No. 115-391, 132 Stat. 5194, 5222. The FSA imposes two limits on eligibility. First, the defendant may not seek a reduction if their sentence was already modified to under the Fair Sentencing Act of 2010. Second, a defendant may not seek resentencing under the FSA if they lost a prior motion after a "complete review of the motion on the merits."

The Sixth Circuit concluded that the district court denied Beamus relief without reaching the merits, and the government conceded error on appeal. Beamus "was convicted of an offense for which the Fair Sentencing Act modified the statutory penalty, and he has not received a reduction in accordance with that Act or lost such a motion on the merits. The text of the First Step Act contains no freestanding exception for career offenders. Nor would one expect to see such an exception. It makes retroactive the Fair Sentencing Act's changes to the statutory range for crack cocaine offenses.."

Accordingly, the Sixth Circuit held that the district court erred in finding Beamus was ineligible for a reduction under the First Step Act based on his career offender enhancement. Whether a reduction was warranted or not is ultimately up to the district court's discretion. However, Beamus' eligibility for a reduction was not. The Sixth Circuit reversed the district court's denial and remanded for further proceeding.

Attach # 2

United States v. Sterling, No. 18-2974 (8th Cir. Nov. 1, 2019)

Sterling pled guilty to two counts of cocaine distribution and one count of conspiracy to distribute 28 grams or more of cocaine, in violation of 21 U.S.C. 841(a)(1), (b)(1)(B), (b)(1)(C), and 846.

The PSR calculated quantities of powdered cocaine and cocaine base involved in controlled buys, and the quantities of drugs and cash seized during a warrant search of a co-defendant's residence. The PSR found Sterling accountable for 168 kilograms of marijuana equivalent based on the controlled buys and seizure, which resulted in a Base Offense Level ("BOL") of 24 (U.S.S.G. 2D1.1(c)(8) calls for a BOL of 24 for 100 to 400 kilograms of marijuana equivalent). However, the PSR noted that Sterling's two co-defendants' plea agreements contained stipulations to being accountable for distributing at least 400 but less than 700 kilograms of marijuana equivalent. Sterling objected to this being included in the PSR, as it raised his BOL from 24 to 26.

At sentencing, the government produced no further evidence regarding the drug quantity. Instead, it called three witnesses who testified to an unrelated offense that occurred during the conspiracy period to underscore Sterling's criminal history. At the end of the hearing, the district court overruled Sterling's objection to the BOL of 26 based on "what was presented in the [PSR]."

On appeal before the Eighth Circuit, Sterling argued that the district court's Guidelines calculations were clearly erroneous. The Eighth Circuit agreed.

The court noted that it is the government's burden to prove the quantity of drugs for which Sterling is responsible for by a preponderance of the evidence. Further, since Sterling was charged in a conspiracy, he was liable for acts of his co-defendants that were in furtherance of the conspiracy and reasonably foreseeable. U.S.S.G. 1B1.3(a)(1)(B). In addition, the court discussed how "[w]hen the amount of narcotics seized by the government does not reflect the scale of the drug trafficking offense 'the court shall approximate the quantity of the controlled substance' and may consider, for example, 'similar transactions in controlled substances by the defendant.' U.S.S.G. 2D1.1, comment. (n.5)."

In Sterling's case, the Eighth Circuit held, "[m]any defendants have appealed estimated drug quantity findings; few have cleared the high bar of clear error review." But here, the PSR combined with the plea agreement conclusively established only a BOL of 24 based on the 168 kilograms of marijuana equivalent. As the court found, "PSR made no attempt to quantify the 'multiple individually wrapped baggies' the undercover detective observed during five controlled buys, and the detective did not testify."

The government's sole argument on appeal is that the amount Sterling's co-defendants stipulated to was reasonable foreseeable to Sterling as relevant conduct. The Eighth Circuit found that without the co-defendants' testimony at the sentencing hearing to establish quantity and foreseeability, the government's argument was mere speculation.

Because the information contained in the PSR did not have "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. 6A1.3(a), the Eighth Circuit held that the district court clearly erred in relying on the Probation Officer's unsupported opinion. The court reversed and remanded the case for resentencing.

A few of those cases in view of the now unconstitutionally vague language and cannot stand;                                    similar to Petitioner's claims for relief such as:

United States v. Brazier, et. al., (Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269) (7th Cir. August 12, 2019)  In the early hours of September 8, 2015, in South Bend, Indiana, appellants Brazier, Fields, and Mzembe kidnapped, shot, and ruthlessly beat Adrian Harris as he left his home. Charged with federal kidnapping and firearms crimes, the three defendants were tried and sentenced separately, but their appeals have been consolidated. The defendants do not challenge their convictions for the underlying crimes of kidnapping or holding Harris for ransom, and the two defendants convicted of being felons in possession of firearms do not challenge those convictions. Defendants Fields and Mzembe were also convicted and sentenced under 18 U.S.C. § 924(c) for using and discharging firearms during a crime of violence. The district court complied with circuit law applicable at the time of its decisions. Later decisions by the Supreme Court and this court, however, require us to reverse Fields' and Mzembe's convictions and sentences under § 924(c). The Court also concluded both of their cases should be remanded for resentencing.

3rd Circuit )
In Re: Mathews, et al., (Nos. 16-2027/2080/-2273/2414/2422) (3rd Cir. August 14, 2019)  This is a consolidated case involving five Petitioners Michael Matthews, David Dupree, Sebastian Williams, Larry Smith, and Russell McNeill, III each of whom have filed second or successive habeas petitions under 28 U.S.C. § 2255(h)(2) to challenge their sentences for their convictions under 18 U.S.C. § 924(c). Each Petitioner's § 2255 motion argued that § 924(c)(3)'s residual clause is unconstitutionally vague. In the time since this case was argued before this Court, the Supreme Court decided United States v. Davis, striking down § 924(c)(3)(B) as unconstitutionally vague. The parties concede that the petitions at issue are now timely under Davis. The Court authorized all of the petitions.

5th Circuit
United States v. Reece, (No. 17-11078) (5th Cir. September 9, 2019)  Reece stands convicted of four counts of using and carrying a firearm during and in relation to a crime of violence ("COV"), in violation of 18 U.S.C. § 924(c). For three of those four counts, the underlying COV was conspiracy to commit bank robbery. After his convictions were affirmed on direct appeal, Reece filed a federal habeas corpus petition seeking vacatur of his three conspiracy-predicated § 924(c) convictions on the ground that Johnson v. United States, 135 S. Ct. 2551 (2015), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018), rendered § 924 (c)(3)(B) unconstitutionally vague. The district court denied his petition, and Reece appealed. While his appeal was pending, the Supreme Court held § 924(c)(3)(B) unconstitutional. See United States v. Davis, 139 S. Ct. 2319 (2019). Because Davis announced a new, retroactively applicable rule of constitutional law, the Court considered the merits of Reece's petition. The Court therefore vacated and remanded for resentencing

6th Circuit
Knight v. United States, (No. 17-6370) (6th Cir. August 27, 2019)  Knight appealed the district court's denial of his motion to amend his 28 U.S.C. § 2255 petition to challenge his convictions under 18 U.S.C. § 924(c) (use of a firearm during and in relation to a "crime of violence") in light of Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"). While Knight's appeal was pending, the Supreme Court held that the residual clause of the definition of "crime of violence" in § 924(c)(3)(B) is unconstitutionally vague. United States v. Davis, 139 S. Ct. 2319, 2336 (2019).
The government conceded that under Davis kidnapping in violation of 18 U.S.C. § 1201(a) is not a "crime of violence" and thus Knight's conviction under § 924(c) for using a firearm during and in relation to kidnapping must be vacated. Accordingly, the Court vacated Knight's § 924(c) conviction for using a firearm during a kidnapping, and robbery of a postal employee, and

United States v. Begay, (No. 14-10080)(9th Cir. August19, 2019)  The panel affirmed a conviction for second-degree murder (18 U.S.C. §§ 1111 and 1153), reversed a conviction for discharging a firearm during a "crime of violence" (18 U.S.C. § 924(c) (1)(A)), reversed a mandatory restitution
order, and remanded for resentencing. The panel held that because second-degree murder can be committed recklessly, it does not categorically constitute a "crime of violence" under the elements clause, 18 U.S.C. § 924(c)(3)(A). Because in light of United States v. Davis, 139 S. Ct. 2319 (2019), second-degree murder likewise cannot constitute a crime of violence under the residual clause, 18 U.S.C. § 924(c)(3)(B), the panel concluded that the defendant's § 924(c) conviction cannot stand.
The panel held that because second-degree murder is not categorically a crime of violence, the district court erred in imposing mandatory restitution under 18 U.S.C. § 3663A.

(BIGLOW v. UNITED STATES)

Biglow was convicted of conspiracy.  Under Federal law, "[a]ny person who attempts or conspires to commit" various drug crimes "shall be subject to the same penalties as those prescribed for the offense, the commission of which was

---

[1] As discussed below, it is also doubtful that upholding the sentence on the basis of judge-found facts found by the district court or this court for the first time on appeal would be permitted by *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

[2] Although our analysis focuses on Biglow's conviction under 21 U.S.C. § 846 (conspiracy to commit certain drug offenses), Biglow was also convicted of multiple violations of 21 U.S.C. § 843(b) (unlawful use of a communication facility).  Those sentences were "grouped at sentencing with the conspiracy count," and are based on the same drug-quantity determination. *Biglow I*, 554 F. App'x at 685.  They run concurrently with the conspiracy sentence.  Thus, those sentences are also vacated for resentencing on remand.

-2-                          Attachment #5

the object of the attempt or conspiracy." 21 U.S.C. § 846. One such crime is established by § 841(a)(1), which bans the distribution of various controlled substances. Under § 841(b)(1)(B)(ii)(II), a defendant faces a five-year mandatory minimum if he violates § 841(a)(1) by distributing 500 grams or more of a mixture or substance containing cocaine.

The district court imposed that five-year mandatory minimum after Biglow's conviction under § 846 for being part of a conspiracy that, as a whole, wished to distribute 500 grams or more of cocaine. On appeal, we vacated the sentence and remanded for resentencing. We explained that the "quantity of drugs attributable to a defendant at sentencing is not necessarily the same as the amount involved in the conspiracy as a whole," and that Biglow's punishment had to correspond to particularized findings regarding the contraband for which he was personally "accountable." *Biglow I*, 554 F. App'x at 684–85. No such particularized drug-quantity findings had been made; the court had imposed the mandatory minimum associated with actually distributing 500-plus grams of cocaine because Biglow was convicted of being part of a conspiracy that wished to do just that. The government conceded plain error. *See id.* at 684.

On remand, the district court made particularized findings that Biglow was responsible for only 192 grams of cocaine, much less than the 500 grams necessary to support the mandatory minimum. Nevertheless, it again imposed a mandatory minimum, concluding § 846 left it no other options.

-3-

## II. Analysis

Biglow contends (and the government concedes) the district court wrongly imposed a mandatory-minimum sentence despite a drug-quantity finding of 192 grams, which here would have prescribed a guidelines range of 27–33 months. We agree.

As we held in *Biglow I*, a drug-conspiracy conviction alone is insufficient to make an individual conspirator responsible for the entire quantity of drugs for which the conspiracy was responsible. Instead, these defendants may only be punished for the amount of controlled substances that can be "attributed" to them personally, as opposed to the conspiracy generally. *See United States v. Figueroa-Labrada*, 720 F.3d 1258, 1265 (10th Cir. 2013) (noting attributable amount is "not necessarily based on the overall amount involved in the conspiracy for which [a defendant] was convicted or on the transactions in which he personally participated"). To determine this amount, the district court must hold the defendant "accountable" for his "relevant conduct," which "includes all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant and all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity." *Id.* (quoting USSG §§ 1B1.3(a)(1)(A), (B)) (internal quotation marks omitted) (alteration in original). This "includes any controlled substance that was handled by another member of the conspiracy" if it was "in furtherance of the jointly

-4-

undertaken criminal activity" and "reasonably foreseeable in connection with that criminal activity." *Id.* In short, a defendant is "accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Id.* (omission in original).

The attributed drug quantity will then be used both to determine a conspirator's appropriate guidelines range and to determine whether a statutory mandatory penalty associated with the underlying object offense of the conspiracy applies to an individual conspirator, *see United States v. Asch*, 207 F.3d 1238, 1245 n.7 (10th Cir. 2000).[3] This is the principle we relied on in vacating Biglow's original sentence, indicating that if on remand "a quantity less than 500 grams [was] attributable to [Biglow]," the "district court would not sentence him to the mandatory minimum for 500 grams or more." *Biglow I*, 554 F. App'x at 684.

Even so, and despite only attributing 192 grams of cocaine to Biglow, the district court concluded that Biglow's conspiracy conviction required sentencing him to the mandatory minimum. The government advises that conclusion was error (even though it urged the district court to undertake the analysis it will not

---

[3] As discussed below, the government disputes whether the attribution method described above applies to triggering a mandatory minimum. But, as also noted, we do not pass on that question because our application of this method to that precise question in *Biglow I* set the law of the case for our current purposes.

defend on appeal), but urges us to affirm the sentence on the alternative basis that evidence in the record proves that 500-plus grams of cocaine are attributable to Biglow.

For several reasons, we disagree.  First and importantly, much of the government's argument on this point is foreclosed by the law of the case. Generally, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1143 (10th Cir. 2006)

A "complementary theory" is the "mandate rule," which "generally requires [district] court conformity with the articulated appellate remand." *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996) (alteration in original).  The mandate "consists of our instructions to the district court at the conclusion of [an] opinion, and the entire opinion that preceded those instructions." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003).  Thus, it includes any issue decided explicitly or by necessary implication in the opinion. *See id.*; *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1410 (10th Cir. 1996) ("[T]he law of the case applies to issues that are resolved implicitly . . . .").

The government does not dispute that *Biglow I* established the law of the case and thus constituted the mandate on remand.  In *Biglow I*, we stated Biglow was only accountable for his relevant conduct: "all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of

-6-

contraband that were within the scope of the criminal activity that he jointly undertook." *Biglow I*, 554 F. App'x at 684 (quoting *Figueroa-Labrada*, 720 F.3d at 1265) (omission in original). Consequently, according to *Biglow I*, defendants like Biglow cannot receive a statutory mandatory minimum unless the factfinder makes "particularized findings regarding the scope" of the defendant's attributable conduct that meet or exceed the statutory triggering amount of 500 grams. *Figueroa-Labrada*, 720 F.3d at 1265.

That mandate forecloses part of the government's argument. Although it never attacks *Biglow I* directly, it claims the attribution method described in *Figueroa-Labrada* and applied in *Biglow I* does not apply to cases not involving a statutory minimum. Instead, it suggests a different, broader rule applies when determining whether a statutory minimum has been triggered, relying on a line of cases beginning with *United States v. Arias-Santos*, 39 F.3d 1070 (10th Cir. 1994). Under that standard, it says, defendants can be held responsible "for drugs involved in the activities of coconspirators" as long as those activities were "reasonably foreseeable to [the] defendant." Aple. Br. at 24 (internal quotation marks omitted). That is, the government need not show the defendant jointly undertook the criminal activity leading to the coconspirators' actions, a requirement it says applies only in the guidelines context. *Id.*; *see also id.* at 26 n.9 (asserting this "reasonable-foreseeability standard is broader than 'jointly undertaken criminal activity' and is thus easier to prove").

-7-

As an initial matter, whatever else *Arias-Santos* and related cases mean, we do not understand the government to assert they mean defendants in these cases are accountable for drugs involved in the activities of coconspirators simply as long as those acts are "reasonably foreseeable" to them.  The standard is "within the scope of the agreement *and* reasonably foreseeable to [the defendant]."  *Arias-Santos*, 39 F.3d at 1078 (emphasis added).  The scope requirement is key: it means that just knowing of coconspirators' illicit activities, without more, will not suffice to attribute such activities to a defendant unless the activities are also within the agreement's scope.

Even then, it is not clear our cases support the distinction the government asserts between attribution calculations for statutory penalty purposes and attribution calculations for guidelines purposes.  For example, in *Arias-Santos*, the defendant claimed that an erroneous 500-gram cocaine attribution resulted in "an improperly high guideline range" *and* that "her downward departure was erroneously restricted by the inapplicable statutory minimum [associated with 500 grams of cocaine]."  *Id.* at 1077–78.  We disposed of both arguments, thus determining her accountability for both purposes, by asking a single question: whether the factfinder clearly erred in concluding the 500 grams were in fact "within the scope of the agreement and reasonably foreseeable to her."  *Id.* at 1078; *see also United States v. Johnston*, 146 F.3d 785, 795 (10th Cir. 1998) (applying the *Arias-Santos* language in evaluating district court's guidelines

-8-

calculation); *United States v. Morales*, 108 F.3d 1213, 1225–26 (10th Cir. 1997) (applying the relevant-conduct language from the Guidelines in determining propriety of a mandatory minimum). With this understanding, there is no meaningful difference between *Figueroa-Labrada* and *Arias-Santos*.

In any event, the government asks us to apply this "*Arias-Santos* rule" to attribute 500-plus grams of cocaine connected with the actions of Biglow's coconspirators to Biglow as reasonably foreseeable to him. But this alternative reading of the record is inconsistent with *Biglow I*, which established the particularized-attribution law that applies here and is binding absent any clearly applicable exception. The government has offered none, and our independent review has revealed none.

Consequently, the attributable quantities are those with which Biglow was "directly involved" and "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Figueroa-Labrada*, 720 F.3d at 1265. We review a sentencing court's calculation of the quantity of drugs attributable to a defendant for clear error and reverse only if it "was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Patterson*, 713 F.3d 1237, 1249 (10th Cir. 2013). The court explicitly rejected the 500-plus gram argument when it found Biglow accountable for only 192 grams at resentencing. *See* R., Vol. I at 123 (rejecting government's arguments that "Biglow is

responsible for greater quantities" and finding Biglow "responsible for 192 grams of cocaine for the reasons in the record at his original sentencing"). We see no clear error in that finding.

The government relies on two pieces of testimony in an effort to show clear error, both of which it presented to the district court below. First, it directs us to a phone call between Biglow and Tyrone Andrews, a coconspirator, in which it contends Biglow showed knowledge that Andrews and other coconspirators were handling kilogram quantities of cocaine, thus making 500-plus grams of cocaine necessarily attributable to Biglow.

Second, the government argues the discovery of a plastic bag containing cocaine residue and "capable of holding a kilogram of cocaine" at Biglow's residence should have led the court to conclude Biglow "was handling kilogram-sized quantities of cocaine." Aple. Br. at 35–36.

We find neither point persuasive. Biglow's mere knowledge of Andrews's other drug activities, without more, is insufficient to hold him accountable for those activities since defendants are accountable for "any controlled substance that was handled by another member of the conspiracy" *if* it was "in furtherance of the jointly undertaken criminal activity" *and* "reasonably foreseeable in connection with that criminal activity." *Figueroa-Labrada*, 720 F.3d at 1265. The district court could have permissibly thought the phone call insufficient to attribute 500-plus grams to Biglow under either or both of these prongs,

-10-

regardless of his knowledge of Andrews's other activities. *See id.* (noting

importance of determining "the scope of *the specific agreement the individual*

*defendant joined* in relation to the conspiracy as a whole") (emphasis added); *see*

*generally* USSG § 1B1.3, comment. (n.2) (providing several examples applying

this rule).  After all, Andrews's illegal activities with other coconspirators were

not necessarily in furtherance of Biglow's jointly undertaken criminal activity:

The conspiracy-related activity that may be attributed to a defendant as relevant

conduct is "not necessarily the same as the scope of the entire conspiracy."

*Figueroa-Labrada*, 720 F.3d at 1265.  The record does not foreclose the court's

conclusion.  Indeed, *Biglow I* expressly anticipated it by noting the possibility

that a sub-500-gram attribution to Biglow would preclude the mandatory

minimum on remand even though Biglow knew of Andrews's 500-plus-gram

activities.  *See Biglow I*, 554 F. App'x at 682, 684.

The plastic bag containing cocaine residue does not compel a contrary

result.  That a container can hold a kilogram of a given substance certainly does

not preclude the storage of smaller quantities there.  We will not hold the district

court's 192-gram determination clearly erroneous just because a container that

could hold a kilogram once held an indeterminate quantity of cocaine.

The district court rejected these arguments below, and the government has

not shown that decision was without factual support in the record.  Showing the

court could have concluded otherwise is insufficient.  Thus, we cannot invalidate the district court's 192-gram finding.

Because we reject the government's argument for upholding the mandatory minimum, we need not consider whether actually accepting the argument—i.e., affirming on a factual determination made for the first time on appeal—would be permissible after *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  In *Alleyne*, the Supreme Court held that "a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." *Id.* at 2160.  Because such facts "by law[] increase[] the penalty for a crime," they "*must be submitted to the jury and found beyond a reasonable doubt.*" *Id.* at 2155 (emphasis added).  Thus, after *Alleyne*, a district court may not "use its own drug quantity finding to alter the defendant's *statutory* sentencing range." *United States v. Cassius*, 777 F.3d 1093, 1094 (10th Cir. 2015).  And, in cases like ours, particularized drug-quantity findings are facts triggering mandatory minimums.

Despite this, *Alleyne* could only potentially constrain our decision if we *upheld* the mandatory minimum by reviewing the record ourselves.  Because we only examined the facts in the course of *rejecting* the government's argument for triggering a mandatory minimum, this disposition raises no *Alleyne* questions.  But it is clear *Alleyne* will affect the ability of the district court to impose a statutory mandatory minimum absent jury factfinding.  We nonetheless leave for

-12-

the parties and the district court to consider any lingering *Alleyne* questions for remand.

## III. Conclusion

For the foregoing reasons, we VACATE Biglow's sentence and REMAND for de novo resentencing. *See United States v. Thomas*, 749 F.3d 1302, 1315 (10th Cir. 2014) ("[A] remand for resentencing generally allows the district court to conduct de novo review . . . .").

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge

**UNITED STATES OF AMERICA, Appellant, v. <u>JOHN PAULING</u>, A/K/A JJ, Defendant-Appellee.**
**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
924 F.3d 649; 2019 U.S. App. LEXIS 15282
**Docket No. 17-2539-cr**
**October 23, 2018, Argued**
**May 23, 2019, Decided**

**Editorial Information: Prior History**

{2019 U.S. App. LEXIS 1}ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. Appeal by the government from an opinion and order of the United States District Court for the Southern District of New York (Oetken, J.) granting defendant-appellee?s motion to vacate a portion of the jury?s guilty verdict. After a four-day trial, the jury convicted defendant-appellee of conspiracy to distribute 100 grams or more of heroin as well as several other narcotics and firearms violations. Defendant-appellee moved to vacate the jury?s verdict on the conspiracy count, on the basis that the evidence at trial was insufficient to establish the quantity element of the crime. The district court granted the motion, vacated the jury?s finding as to quantity, and entered a verdict of guilty to a lesser included offense. The government appeals, arguing that it introduced evidence sufficient to prove quantity and that therefore the jury?s verdict should be reinstated. AFFIRMED and REMANDED for sentencing.United States v. Pauling, 256 F. Supp. 3d 329, 2017 U.S. Dist. LEXIS 89996 (S.D.N.Y., June 12, 2017)

**Disposition:**
AFFIRMED and REMANDED for sentencing.

**Counsel**          JASON M. SWERGOLD, Assistant United States Attorney (Amanda L. Houle, Micah W.J. Smith, Assistant United States Attorneys, on the brief), for Geoffrey S. Berman,{2019 U.S. App. LEXIS 2} United States Attorney for the Southern District of New York, New York, New York, for Appellant.
          YUANCHUNG LEE, Federal Defenders of New York, Inc., New York, New York, for Defendant-Appellee.

**Judges:** Before: KATZMANN, Chief Judge, and KEARSE and CHIN, Circuit Judges.

**CASE SUMMARY**A district court's order granting defendant's Fed. R. Crim. P,. 29 motion to set aside his conviction on a conspiracy count was affirmed, and the case was remanded for resentencing because, while the government proved 89 grams of heroin were attributable to the conspiracy, it did not prove the conspiracy involved the additional 11 grams.

**OVERVIEW: HOLDINGS:** [1]-The order granting defendant's motion to set aside conviction on a conspiracy count was affirmed, and the case was remanded for resentencing because, while the government proved beyond a reasonable doubt 89 grams of heroin were attributable to the conspiracy, the evidence was insufficient to permit a reasonable jury to find beyond a reasonable doubt the conspiracy involved an additional 11 grams of heroin necessary to reach the 100-gram threshold, the jury could not rationally conclude beyond a reasonable doubt a specific yet temporally unknown transaction, the existence of which was evidenced solely by five words, which were not uttered by either defendant or the coconspirator, involved heroin provided by the coconspirator, and there was no additional quantity

CIRHOT                                    1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

attributable to the coconspirator that defendant could fairly be said to have reasonably foreseen.

**OUTCOME:** Order affirmed and remanded.

CIRHOT                                          2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

{924 F.3d 652} Chin, *Circuit Judge*:

In this case, a jury convicted defendant-appellee **John Pauling** of conspiring to distribute or possess with the intent to distribute 100 grams or more of heroin. The parties agree that the government was required to prove that the heroin in question was the subject of a conspiracy between Pauling and one of his suppliers, referred to as ?Low? (the ?Pauling-Low conspiracy?), and that the government proved beyond a reasonable doubt that 89 grams of heroin were attributable to the Pauling-Low conspiracy. The parties disagree, however, as to whether the government proved that the Pauling-Low conspiracy involved the additional 11 grams of heroin necessary to reach the 100-gram threshold.

The district court granted Pauling?s motion pursuant to Federal Rule of Criminal Procedure 29 to set aside his conviction on the conspiracy count on the ground that the evidence introduced at trial failed to establish that an additional 11 grams of heroin were attributable{2019 U.S. App. LEXIS 3} to the Pauling-Low conspiracy. Instead of entering judgment convicting Pauling of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, it entered judgment finding Pauling guilty of a lesser included offense, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. The former offense carries a five-year mandatory sentence for violations involving 100 grams or more of heroin, while the latter offense carries no mandatory minimum and contains no quantity element.1 The government appeals.

We conclude that the evidence at trial was insufficient to permit a reasonable jury to find beyond a reasonable doubt that the Pauling-Low conspiracy involved an additional 11 grams of heroin. Accordingly, we affirm and remand for sentencing.

## *BACKGROUND*

### {924 F.3d 653} A. *Factual Background*2

Between May 25 and July 14, 2016, the Drug Enforcement Administration (?DEA?) intercepted phone calls between Pauling and various associates, including an individual named ?Low.? On July 14, Pauling was arrested by authorities. Upon his arrest, agents seized from Pauling?s apartment approximately 600 glassine bags, a digital scale, materials that could be used as a cutting agent, and other paraphernalia associated with the distribution of controlled substances.

Pauling concedes that the government{2019 U.S. App. LEXIS 4} established at trial that he and Low conspired to distribute 89 grams of heroin. This was shown through wiretap evidence of four transactions. On June 26, 2016, Pauling purchased 30 grams of heroin from Low for resale to a customer named ?Flow.? On June 27, Pauling combined 10 grams of heroin he received from Low with 20 grams of a cutting agent, for a total of 30 grams of heroin. On July 3, Pauling requested 14 grams of heroin from Low for a customer named ?Steve.? Finally, on July 11, Low supplied Pauling with 11 grams of heroin, again for Steve, which Pauling cut for a total of 15 grams. The four transactions thus involved a total of 89 grams of heroin.3

The conversation between Pauling and Steve about the July 3 transaction is at issue in this appeal. At 1:16 p.m. that day, Pauling spoke to Steve about the quantity of heroin Steve wanted to order:

PAULING: [T]ell me, the count, that?s, you know, tomorrow.

STEVE: I?ll meet you on, hold on one second. I?m on 17, as a matter of fact, same thing as last time, same thing [as] last time.

PAULING: Where was it? I forgot, shit because there was so many people.

CIRHOT                                                               1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

STEVE: Hold on, right, right. I?ma go to, uh, 14th floor.App?x at 122. The parties**{2019 U.S. App. LEXIS 5}** agree that the floor number was code for drug quantity, in grams. Approximately three hours later, at 4:04 p.m., Pauling called Low:

PAULING: Yo um, how we gonna do this cause my man wants four-fourteen right and he be down tomorrow and I got some other people who want --

LOW: 14?

PAULING: Huh?

LOW: You said 14?

PAULING: Yeah, and I got these other people that want a gram-, two grams shit like that.*Id.* at 124. There is no dispute that the July 3 calls account for 14 grams of heroin attributable to the Pauling-Low conspiracy, and this amount is included in the 89 grams discussed above. The parties disagree, however, about whether Steve?s reference to ?same thing as last time? during the 1:16 p.m. call referred to a prior 14-gram transaction of heroin supplied by Low? The government argues that it did and that the total quantity of heroin attributable to the Pauling-Low conspiracy was therefore 103 grams -- just over the 100-gram **{924 F.3d 654}** threshold required for the conspiracy count.

The wiretaps also provided information about the relationship between Pauling and Low. Pauling owed Low money. Pauling was aware that Low had a stash house for his narcotics, and he was aware that Low?s associate ?Play? worked at**{2019 U.S. App. LEXIS 6}** the stash house. Pauling and Low discussed prices. On more than one occasion, they discussed in detail the process of cutting narcotics and the benefits of certain cutting agents.4 Pauling also indicated on several occasions that he would help sell Low?s product.5 The government argues that this evidence proved circumstantially that Pauling and Low conspired to distribute at least another 11 grams of heroin beyond the 89 grams discussed above.

### B. *Procedural History*

On July 14, 2016, the DEA arrested Pauling for his alleged involvement with guns and drugs in the New York City area. The government indicted Pauling on August 18, 2016, on five counts. The government filed a superseding indictment on January 19, 2017, charging Pauling with eight counts: (a) conspiring to distribute and to possess with intent to distribute 100 grams or more of mixtures containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 (?Count One?); (b) three counts of distributing and possessing with intent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); (c) one count of firearms trafficking, in violation of 18 U.S.C. § 922(a)(1)(A) and (a)(2); (d) one count of using, carrying, or possessing a firearm in connection with the heroin distribution conspiracy charged**{2019 U.S. App. LEXIS 7}** in Count One, in violation of 18 U.S.C. § 924(c) (?Count Six?); and (e) two counts of possessing a firearm after sustaining a felony conviction, in violation of 18 U.S.C. § 922(g)(1).

Trial began on February 13, 2017. At the close of the government?s case-in-chief on February 15, Pauling moved for a judgment of acquittal as to Count One under Federal Rule of Criminal Procedure 29, citing insufficient evidence to sustain a conviction. The court reserved decision. On February 16, Pauling conceded in his closing argument that he was guilty of all counts except for Counts One and Six. The jury returned its verdict later that day, finding Pauling guilty of all but Count Six.

On March 24, 2017, Pauling renewed his motion under Rule 29 to vacate and set **{924 F.3d 655}**

CIRHOT                                                    2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

aside the portion of the jury?s verdict on Count One finding that at least 100 grams of heroin were attributable to the Pauling-Low conspiracy. Pauling moved in the alternative for a new trial pursuant to Rule 33 as to that count. He argued that the July 3 call could not support a jury finding of 28 grams by including the alleged prior 14-gram transaction and that the 100-gram threshold was not otherwise proven beyond a reasonable doubt. The government opposed both motions, arguing that the jury could have reasonably inferred from{2019 U.S. App. LEXIS 8} the July 3 call that the ?same thing as last time? referred to an earlier transaction in which Pauling sold Steve 14 grams of heroin sourced from Low. It argued that this prior 14-gram transaction should be included, thus bringing the total quantity attributable to the Pauling-Low conspiracy to 103 grams. It argued alternatively that the jury could reasonably infer from the ?close working relationship? between Pauling and Low that their conspiracy extended ?well beyond? 100 grams. App?x at 216-17.

On June 12, 2017, the district court granted Pauling?s motion to vacate and set aside his conviction on Count One and entered a verdict of guilty to a lesser included offense. The district court also conditionally granted Pauling?s motion for a new trial, pending the outcome of this appeal. Pauling?s sentencing, scheduled for September 13, 2017, was stayed pending this appeal.

## DISCUSSION

Pauling does not challenge the jury?s finding that he participated in a conspiracy with Low to distribute heroin. Nor does he dispute that the evidence established that he directly participated with Low in the distribution of 89 grams of heroin. We are therefore presented with a single, discrete question: Whether{2019 U.S. App. LEXIS 9} the government presented evidence sufficient for the jury to find beyond a reasonable doubt that an additional 11 grams or more of heroin was attributable to the Pauling-Low conspiracy. The government argues that it did so, relying first on the July 3 telephone call and second on the evidence of an ongoing relationship between Pauling and Low.

### I. Applicable Law

The quantity of drugs involved in a violation of § 841(b)(1)(B) is an element of the charged offense, see United States v. Gonzalez, 420 F.3d 111, 131 (2d Cir. 2005), and the government has the burden of proving the charged quantity beyond a reasonable doubt, id. at 120. The quantity element is met only if ?a single conspiracy,? rather than ?separate agreements [that] may have been charged under the umbrella of a single conspiracy count,? crosses the quantity threshold. United States v. Barnes, 158 F.3d 662, 670-71 (2d Cir. 1998). Thus, while the evidence at trial established that Pauling conspired to distribute over 200 grams of heroin with various individuals, see App?x at 202, it was the government?s burden with respect to Count One to prove that 100 or more of those grams were attributable to a single conspiracy -- the Pauling-Low conspiracy.

Due process requires that essential elements of a crime be proven beyond a reasonable doubt to ensure that ?no person shall{2019 U.S. App. LEXIS 10} be made to suffer the onus of a criminal conviction except upon sufficient proof.? Jackson v. Virginia, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); see also In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Rule 29 of the Federal Rules of Criminal Procure is one means of protecting this constitutional right; it enables the district court to vacate a conviction if it concludes that ?no rational trier of fact could find guilt beyond a reasonable doubt.? Jackson, 443 {924 F.3d 656} U.S. at 317; see also United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012) (?[W]e will uphold the judgment[] of conviction if ?any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.?? (quoting Jackson, 443 U.S. at 319)). We review de novo a district court?s grant of a Rule 29 motion based on a finding that the trial evidence was insufficient to support the jury?s verdict, applying the same standard the district court applies in review of the evidence. United States v. Truman, 688 F.3d 129, 139 (2d Cir. 2012).

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A defendant challenging a jury?s guilty verdict ?bears a heavy burden.? *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (internal quotation marks omitted). This is because, ?[i]n evaluating a sufficiency challenge, we ?must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence.?? *Id.* (quoting *Coplan*, 703 F.3d at 62). This deferential standard of review{2019 U.S. App. LEXIS 11} is ?especially important when reviewing a conviction of conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon?s scalpel.? *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992) (internal quotation marks omitted).

?An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.? *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) (alterations omitted) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)). Impermissible speculation, on the other hand, is ?a complete absence of probative facts to support the conclusion reached.? *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S. Ct. 740, 90 L. Ed. 916 (1946). While we must defer to a jury?s reasonable inferences, we give no deference to impermissible speculation. *United States v. D?Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994).

The line between permissible inference and impermissible speculation ?is drawn by the laws of logic? and not ?judicial idiosyncrasies.? *Tose v. First Pa. Bank, N.A.*, 648 F.2d 879, 895 (3d Cir. 1981), *abrogated on other grounds by Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982). As the Supreme Court has instructed, ?the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.? *Galloway v. United States*, 319 U.S. 372, 395, 63 S. Ct. 1077, 87 L. Ed. 1458 (1943). Thus, in a criminal case,{2019 U.S. App. LEXIS 12} ?the government must do more than introduce evidence ?at least as consistent with innocence as with guilt.?? *D?Amato*, 39 F.3d at 1256 (quoting *United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991)).

At times it may be difficult to distinguish between inference and speculation, as some speculation may indeed be reasonable. Reasonable speculation occurs when the finder of fact concludes that a disputed fact exists that is within the realm of possibility, but the conclusion reached is nevertheless unreasonable because it is not logically based on another fact known to exist. *See Langston v. Smith*, 630 F.3d 310, 314, 319 (2d Cir. 2011) (noting distinction between ?reasonable speculation? and ?sufficient evidence?); Leonard B. Sand et al., *Modern Federal Jury Instructions* § 6.01 {924 F.3d 657} (2011) (?The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which . . . the jury [is] permitted to draw . . . from facts which have been established by either direct or circumstantial evidence.?); *see also O?Laughlin v. O?Brien*, 568 F.3d 287, 301-02 (1st Cir. 2009); *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008). Indeed, we ?may not credit inferences within the realm of possibility when those inferences are unreasonable.? *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006).

?[W]here a fact to be proved is also an element of the offense -- here, [drug quantity] -- it is not enough that the inferences in the government?s favor are{2019 U.S. App. LEXIS 13} permissible. We must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt.? *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995); *see also* Sand et al., *supra*, § 6.01 (?[W]hether based upon direct or circumstantial evidence, or upon logical, reasonable inferences drawn from such

CIRHOT                                              4

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

evidence, [the jury] must be satisfied of the guilt of the defendant beyond a reasonable doubt before [it] may convict.?. ?[I]t would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty.? *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks and alternations omitted).

The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes (1) transactions in which he participated directly, (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him, and (3) quantities he agreed to distribute or possess with intent to distribute ?regardless of whether he ultimately committed the substantive act.? *United States v. Jackson*, 335 F.3d 170, 181 (2d Cir. 2003).6

To prove the quantity by one of these means beyond a reasonable doubt, the government must introduce specific evidence of drug quantities,{2019 U.S. App. LEXIS 14} or evidence from which quantity can, through inference, be logically approximated or extrapolated. *See United States v. Archer*, 671 F.3d 149, 163 (2d Cir. 2011) (requiring ?specific evidence? of quantity to sustain quantity-based enhancement). In the absence of such evidence, a jury?s finding as to drug quantity is nothing but ?surmise and conjecture.? *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993). *Compare United States v. Shonubi (?Shonubi II?)*, 103 F.3d 1085, 1092 (2d Cir. 1997) (approving of method of testing four randomly selected heroin balloons to estimate quantity of heroin contained in 103 balloons found inside defendant?s body), *with id.* (disapproving of extrapolation from quantity of eighth trip that each of seven prior trips contained the same quantity). Thus, while quantities of controlled substances in a drug distribution conspiracy prosecution may be determined through extrapolation, approximation, or deduction, there ordinarily must be evidence of known quantities, which are sufficiently representative of the unknown quantities and from which an approximation of the unknown quantities can logically be derived. *See Archer*, 671 F.3d at 163.

Two of our decisions, though summary orders, provide a framework for understanding the role of representative proof in proving drug quantity. In *United States v. Adames*, the defendant was{2019 U.S. App. LEXIS 15} convicted at {924 F.3d 658} trial of conspiracy to distribute five or more kilograms of cocaine, and he challenged the sufficiency of the evidence of quantity. 727 F. App?x 12 (2d Cir. 2018) (summary order). The government introduced evidence linking the defendant to four seized packages. *Id.* at 13. The seized packages contained one kilogram, 530 grams, two kilograms, and 406 grams of cocaine, respectively, Government?s Brief at 5-9, *Adames*, 727 F. App?x 12 (2d Cir. 2018) (No. 17-1254) (describing packages 1, 4, 5, and 9), for a total of 3.936 kilograms, *Adames*, 727 F. App?x at 13. Other evidence linked the defendant to five additional packages of unknown quantity, which the government was unable to seize. *Id.* But one of these unseized packages (package 6) was tracked online from an IP address associated with the defendant?s home and weighed approximately the same as a seized package (package 5) that contained two kilograms of cocaine. Government?s Brief, *supra*, at 8-9. Moreover, package 6 was briefly examined before delivery, and trial testimony indicated that it contained ?brick shaped? objects. *Id.* In addition, although the other unseized packages apparently were never weighed, ?phone records, witness{2019 U.S. App. LEXIS 16} testimony, and other circumstantial evidence establish[ed] that these too were parcels of cocaine.? *Adames*, 727 F. App?x at 13. In light of all the circumstances, we held that ?the Government presented sufficient evidence for a reasonable jury to infer the existence of an additional 1.06 kilograms from the aggregate of the additional unseized packages.? *Id.* at 14.

In *United States v. Martinez*, the defendant challenged a drug-quantity enhancement at sentencing. 133 F. App?x 762 (2d Cir. 2005) (summary order).7 It was undisputed that the defendant was responsible for helping to build nine vehicle ?traps? in three cars used to hide packages of cocaine.

CIRHOT                                                    5

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Id.* at 763-64. The government seized cocaine in one of those traps, which contained 16 kilograms, and evidence showed that the defendant carried 19 kilograms from another vehicle. *Id.* at 765. A trial witness testified that he saw the defendant carrying another 20 kilograms of cocaine. *Id.* The district court concluded that the defendant was responsible for over 150 kilograms ?by averaging the three known quantities attributable to [the defendant] -- 16, 19, and 20 kilograms -- and multiplying by nine, the number of traps [defendant] built.? *Id.* We vacated the drug-quantity{2019 U.S. App. LEXIS 17} enhancement, noting that ?[t]he average quantity of cocaine seized or unloaded from the three cars is not ?specific evidence? of the quantity of cocaine actually transported in the nine traps built by [the defendant]? because ?it is quite possible that the traps were used to transport some other contraband? and the evidence relied upon was not sufficiently reliable. *Id.*

*Adames* and *Martinez* illustrate how the total drug quantity attributable to a defendant can (and cannot) be inferred or extrapolated from known quantities. In *Adames*, it was reasonable to infer from evidence of four seized packages, each containing a range of from 406 grams to two kilograms of cocaine, that a total of at least an additional 1.06 kilograms of cocaine was contained in five unseized packages, one of which was known to have a similar weight to a seized package containing two kilograms of cocaine. The seized packages were sufficiently representative of the unseized packages to support the inference {924 F.3d 659} that the unseized packages contained enough cocaine to reach the quantity threshold. By contrast, in *Martinez*, it was not reasonable to infer from evidence of two vehicle traps containing 16 and 19{2019 U.S. App. LEXIS 18} kilograms of cocaine and testimony that the defendant carried a package of approximately 20 kilograms of cocaine that each of nine traps in three different cars contained the average of the three known quantities. The seized packages were not sufficiently representative of the unseized packages to support the inference that the seized and unseized packages contained a similar quantity of cocaine. A similar lack of representativeness arose in *Shonubi II*, in which we rejected the inference that each of seven prior trips contained the same quantity of drugs as was seized in the eighth trip. 103 F.3d at 1092.

## II. *Application*

The government argues that it presented evidence sufficient for the jury to find beyond a reasonable doubt that an additional 11 grams or more of heroin was attributable to the Pauling-Low conspiracy. It relies first on the July 3 telephone call and second on the evidence of an ongoing relationship between Pauling and Low. We discuss each in turn.

### 1. *The July 3 Phone Call*

The government argues that the evidence permitted the jury to infer that an additional 14 grams of heroin was attributable to the Pauling-Low conspiracy by virtue of the July 3 phone call, in which the buyer mentioned{2019 U.S. App. LEXIS 19} that he wanted the ?same thing as last time? while placing an order for 14 grams of heroin. App?x at 122. While we agree that the words ?same thing as last time? could have been a reference to a prior 14-gram sale of heroin by Pauling to Steve, we hold that no reasonable jury could have found beyond a reasonable doubt that those 14 grams were sourced by Low. *See Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001) (?Although a jury may infer facts from other facts that are established by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation.?).

On the present record, the jury could not rationally conclude beyond a reasonable doubt that a specific yet temporally unknown transaction, the existence of which is evidenced solely by five words -- which were not uttered by either Pauling or Low -- involved heroin provided by Low. The jury did not hear evidence as to who provided the heroin in this prior transaction, when the transaction occurred, or what the circumstances were. To conclude so much on the basis of so little amounts to impermissible speculation. Indeed, trial testimony and wiretap evidence established that Pauling had

CIRHOT                                                          6

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

other suppliers, any one of whom could have supplied{2019 U.S. App. LEXIS 20} the heroin for that prior transaction. *See* Trial Tr. at 175, 183; App?x at 83-84, 88, 98, 100, 103, 127. And while the government introduced evidence that Pauling distributed over 200 grams of heroin, App?x at 202, it did not show that as much as half of that heroin was supplied by Low. Accordingly, without something more, the jury could not reasonably have concluded beyond a reasonable doubt that the words ?same thing as last time? referred to an additional 14 grams of heroin supplied by Low.

### 2. *The Ongoing Relationship*

The government argues that even if the July 3 phone call did not prove that Pauling purchased an additional 14 grams of heroin from Low, it would have been rational for the jury to conclude, based on the evidence of their ongoing relationship, that Pauling and Low conspired {924 F.3d 660} to distribute at least an additional 11 grams of heroin. Proof of drug quantity may be established through proof of an agreement to distribute or possess with intent to distribute, regardless of whether the substantive act was actually completed. *See Jackson*, 335 F.3d at 181. The government asserts that there is ?concrete evidence of Pauling?s specific plans to continue to fill large orders through Low, which were disrupted{2019 U.S. App. LEXIS 21} by Pauling?s arrest,? and that the jury could reasonably have inferred that this agreement contemplated 11 or more grams of heroin. Government?s Br. at 35.

In support of this argument, the government points to the following. First, Pauling and Low mixed and cut heroin together. Second, Pauling sold 89 grams of heroin sourced from Low. Third, Pauling and Low discussed a customer from Queens, which Pauling described as ?good? and ?already established.? App?x at 116. Fourth, Pauling knew that Low?s operation was large enough to require one worker and a stash house. Finally, Pauling and Low had specific discussions in which they appeared to contemplate future distribution of drugs. For instance, on July 12, just before Pauling was arrested, Low told Pauling that he had ?a nice amount of that shit left,? to which Pauling replied, ?I got you, I, I?m a be hittin? you . . . when, um, dude calls me.? *Id.* at 146. According to the government, it would be rational for a jury to infer, for example, that a ??nice? amount was at least enough to fill one of Pauling?s large orders,? that is, between 14 and 30 grams. Government?s Br. at 35.

Over the course of the 17-day period from June 26 to July 12, 2016, Low{2019 U.S. App. LEXIS 22} supplied Pauling with 89 grams of heroin over four transactions -- an average of 22.25 grams per transaction, with a low of 14 grams and a high of 30 grams. While it is certainly within the realm of possibility that the reference to ?a nice amount? meant 14 grams or 30 grams of heroin, it also could have referred to a lesser quantity -- something more than the one- or two-gram sales that sometimes occurred but less than the 11 grams needed to reach the 100-gram threshold. *See Quattrone*, 441 F.3d at 169 (noting that ?courts may not credit inferences within the realm of possibility when those inferences are unreasonable?). On the present record, the conclusion that ?a nice amount? means 11 grams or more may be reasonable speculation, but it is still speculation and therefore is an insufficient basis on which to rest a guilty verdict.8 *See Langston*, 630 F.3d at 314; *see also O?Laughlin*, 568 F.3d at 302 (?The instant facts may support a reasonable speculation that O?Laughlin was the assailant, but not sufficient evidence to establish his guilt. Taken together, the circumstantial evidence in this case, even when drawing all reasonable inferences in favor of the prosecution, does not permit any rational jury to conclude that O?Laughlin was the assailant beyond a{2019 U.S. App. LEXIS 23} reasonable doubt.?); *Newman*, 543 F.3d at 796-97 (?Although circumstantial evidence alone can support a conviction, there are times that it amounts to only a reasonable speculation and not to sufficient evidence. . . . [W]here the evidence taken in the {924 F.3d 661} light most favorable to the prosecution creates only a reasonable speculation that [an element of the crime is met], there is insufficient evidence to satisfy the *Jackson* standard.?).

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Because of the lack of representative proof of the quantity represented by a ?nice? amount, the instant case is more like *Martinez* and *Shonubi II* than *Adames*.

And even assuming it was reasonable for the jury to infer that Pauling and Low conspired to distribute an additional 11 or more grams of heroin, ?[w]e must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the [quantity] element . . . is established beyond a reasonable doubt.? *Martinez*, 54 F.3d at 1043. In this case, we are not satisfied that the proof adduced by the government at trial could permit any rational trier of fact to conclude, beyond a reasonable doubt, that Pauling and Low conspired to distribute an additional 11 grams of heroin. *See Jackson*, 443 U.S. at 320 (?[I]t could not seriously be argued that such{**2019 U.S. App. LEXIS 24**} a ?modicum? of evidence could by itself rationally support a conviction beyond a reasonable doubt.?). Accordingly, the district court correctly determined that there was insufficient evidence to support the jury?s finding that Pauling and Low conspired to distribute 100 grams or more of heroin and, thus, properly granted Pauling?s Rule 29 motion.

Our conclusion is supported by decisions of other courts. Many of our sister circuits have reversed convictions where proof of drug quantity was speculative on facts analogous to these. *See United States v. Navarrete-Aguilar*, 813 F.3d 785, 793, 796 (9th Cir. 2015) (rejecting government?s argument that ?pattern? of drug dealing between conspirators ?allowed the jury to infer a preexisting agreement to distribute? 250 additional grams of heroin because ?it would be speculative to infer that the defendants agreed to *any* future transactions such that they would reach the one kilogram mark?); *United States v. Daniels*, 723 F.3d 562, 571 (5th Cir. 2013) (rejecting government?s argument that distribution of five kilograms of cocaine was inferable from evidence of distribution of roughly 1.5 kilograms of cocaine to one buyer, combined with evidence of sales to six other buyers, because, ?without more evidence as to the quantity of these other sales,? finding of five kilograms was mere speculation);{**2019 U.S. App. LEXIS 25**} *United States v. Hickman*, 626 F.3d 756, 768-70 (4th Cir. 2010) (rejecting government?s argument that the four-month course of conduct between supplier and distributor was ?part of something larger? such that jury could infer an additional 174 grams of heroin because it would be based on a ?hunch or intuition,? and jury cannot ?simply guess at the magnitude or frequency of unknown criminal activity? (internal quotation marks omitted)).

To the extent the government separately argues that the substantial interactions between Pauling and Low proved that additional quantities distributed by Low were reasonably foreseeable to Pauling, we agree that such an inference would be reasonable. But even so, based on the evidence here, no jury could reasonably conclude that any specific quantity of heroin was attributable to Low, beyond the undisputed 89 grams. The fact that Low?s operation involved a stash house and a worker, and that Pauling was aware of these facts, is simply not specific evidence of drug quantity. In the absence of any evidence indicating the quantities generally (or specifically) associated with Low?s operation, quantity is not inferable. There is, therefore, no additional quantity attributable to Low that Pauling could fairly be said to{**2019 U.S. App. LEXIS 26**} have reasonably foreseen.

* * *

{**924 F.3d 662**} Although this is a close case that tests the boundary that exists between the drawing of a permissible inference and impermissible speculation, only surmise and guesswork could lead a jury to determine that Pauling and Low conspired to distribute an additional 11 grams of heroin. ?We are obliged to view the evidence with all reasonable inferences drawn in the Government?s favor, but we may not permit that rule to displace the even more important rule that all elements of an offense must be proven beyond a reasonable doubt.? *Martinez*, 54 F.3d at 1049 (Newman, *J.*, dissenting). While one could argue, based on reasonable speculation, that it was ?likely? or ?probable? that Low and Pauling agreed to distribute an additional 11 grams of heroin, the

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

government had to prove more than likelihood or probability -- it had to prove an agreement to distribute (or possess with intent to distribute) an additional 11 or more grams of heroin beyond a reasonable doubt. *See Lorenzo*, 534 F.3d at 159 (noting that ?it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty? (internal quotation marks and alternations omitted)).

Because the government failed to do so, the district court{2019 U.S. App. LEXIS 27} correctly determined, viewing all of the evidence in the light most favorable to the government and crediting every inference in its favor, that the evidence at trial was insufficient to support a jury finding that 100 or more grams of heroin were attributable to the Pauling-Low conspiracy.

### CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED. The case is REMANDED for sentencing.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

sentence reduction, "(1) the original sentence must have been 'based on' the Sentencing Guidelines, and (2) the amendment must have lowered the Guidelines range 'applicable to' the defendant at the time of the original sentencing." *United States v. Leonard*, 844 F.3d at 107.

1. "Based On"

Although Gonzalez was sentenced above the 78-to-97-month Guidelines range calculated by the district court (and the 63-to-78-month range referenced in his 11(c)(1)(C) agreement), we conclude for the reasons stated in *United States v. Leonard*, 844 F.3d at 107-12, that his 101-month sentence was "based on" the Guidelines as that requirement was construed by justices in the majority in *Freeman v. United States*, 564 U.S. 522, 131 S. Ct. 2685, 180 L. Ed. 2d 519 (2011).

The *Freeman* plurality held that, where a district court accepts an {2017 U.S. App. LEXIS 3} 11(c)(1)(C) agreement, "§ 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to . . . approve the agreement." *Freeman v. United States*, 564 U.S. at 530. "[I]f the judge uses the [calculated] sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense a basis for the sentence." *Id.* at 529.

Here, the district court independently calculated Gonzalez's applicable Guidelines range before agreeing to the parties' stipulated sentence of 101 months, explaining that such an upward departure was "reasonable and understandable" to reflect criminal "conduct for which [Gonzalez was] not going to be prosecuted." App'x Sched. D. at 11; *see United States v. Leonard*, 844 F.3d at 109-10 (stating that *Freeman* plurality "appear[ed] to recognize the possibility that a sentence can be 'based on' the Guidelines even if departing or varying from the applicable Guidelines range"). In sum, it was only after explicitly considering the applicable Guidelines range in conjunction with the 18 U.S.C. § 3553(a) factors that the district court imposed the agreed-upon 11(c)(1)(C) sentence. On this record, we conclude that, under the *Freeman* {2017 U.S. App. LEXIS 4} plurality's rationale for decision, Gonzalez's sentence was "based on" the Guidelines. *See Freeman v. United States*, 564 U.S. at 534 (stating that "judge's decision to accept the [11(c)(1)(C)] plea and impose the recommended sentence is likely to be based on the Guidelines").

{680 Fed. Appx. 49} The district court's statement that the difference between its own Guidelines calculation and that in the plea agreement was "not going to make any difference whatsoever" warrants no different conclusion. App'x Sched. D. at 10. This statement can be read simply as an observation that "based on" its Guidelines calculation, it deemed the agreed-upon sentence an appropriate departure in light of other § 3553(a) factors.

The *Freeman* concurrence identifies the parties' 11(c)(1)(C) agreement, rather than the district court's Guidelines calculation, as critical to the "based on" analysis. *See Freeman v. United States*, 564 U.S. at 539 (Sotomayor, J., concurring in the judgment) (stating that defendant is eligible for relief where plea agreement "make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty"). The concurrence stated that its reasoning was not limited to sentences within a specified Guidelines range, but also applied to departures that {2017 U.S. App. LEXIS 5} were determined by reference to the Guidelines. *See id.* at 543 n.9; *United States v. Leonard*, 844 F.3d at 110. In Gonzalez's plea agreement, the parties detailed a Guidelines calculation for both counts of the information before agreeing that "an upward departure and non-Guidelines sentence [of 101 months' imprisonment] pursuant to Guidelines § 5K2.21 (dismissed and uncharged conduct) is appropriate." App'x Sched. C. at 9. This language makes clear that the basis for the agreed-upon sentence was the identified Guidelines range, with an upward departure specifically authorized by the Guidelines.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In urging otherwise, the government suggests that the stipulated above-Guidelines sentence is based at least in part on its agreement not to file a prior-felony information pursuant to 21 U.S.C. § 851. While the agreement represents that no such information will be filed, it makes no mention of that forbearance as a sentencing factor. Only U.S.S.G. § 5K2.21 is cited to support the departure. We do not understand the *Freeman* concurrence to support looking beyond this ground. *See Freeman v. United States*, 564 U.S. at 538 (Sotomayor, J., concurring in the judgment) (rejecting idea that "§ 3582(c)(2) calls upon district courts to engage in a free-ranging search through the parties' negotiating history"). The government's separate contention that the agreed-upon sentence represented {2017 U.S. App. LEXIS 6} a reduction from potential mandatory minimums fails for the same reason.

Accordingly, we conclude that Gonzalez's sentence was "based on" a Guidelines sentencing range as that requirement has been construed in the *Freeman* plurality and concurring opinions.

### 2. "Applicable To"

Where a defendant pleads guilty pursuant to an 11(c)(1)(C) agreement, his applicable Guidelines range for purposes of determining § 3582(c)(2) eligibility is "that determined by the court as set forth in the Guidelines, without regard to the parties' agreement to a different calculation, and before the exercise of any departure or variance discretion." *United States v. Leonard*, 844 F.3d at 113. The district court here determined that Gonzalez's applicable Guidelines range was 78 to 97 months' imprisonment. Amendment 782 lowered that range to 63 to 78 months. *See* U.S.S.G., Supp. to App. C., Amend. 782 (Nov. 2014).

Because Gonzalez was sentenced to a term of imprisonment based on a subsequently lowered sentencing range and because the subsequent amendment lowered his applicable Guidelines range, he is eligible for a sentence reduction under {680 Fed. Appx. 50} § 3582(c)(2). We are, therefore, obliged to vacate the challenged order of denial and to remand the case. In doing so, however, we note that even {2017 U.S. App. LEXIS 7} if a defendant is eligible for a sentence reduction, it remains within the discretion of the district court to determine whether such a reduction is warranted under the circumstances of the case. *See Dillon v. United States*, 560 U.S. 817, 826-27, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010). We take no position as to whether such a reduction is warranted in this particular case, or, if warranted, the appropriate extent of a reduction. *See id.; United States v. Borden*, 564 F.3d 100, 104 (2d Cir. 2009).

### 3. Conclusion

We have considered the parties' remaining arguments and conclude that they are without merit. Accordingly, the order of the district court is VACATED, and the case is REMANDED for further proceedings.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District _MIDDLE PENNSYLVANIA_ | |
|---|---|---|
| Name *(under which you were convicted)*: _Jose Roldan-Quinones_ | | Docket or Case No.: _1:17-CR-00222-001_ |
| Place of Confinement: _Allenwood-Low_ | | Prisoner No.: _31917-069_ |
| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* | |
| V. | _Jose Roldan-Quinones_ | |

## MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    _U.S. DISTRICT COURT MIDDLE DISTRICT of PENNSYLVANIA 228 WALNUT STREET, HARRISBURG PA 17108-9498_

    (b) Criminal docket or case number (if you know): _1:17-CR-00222-001_

2.  (a) Date of the judgment of conviction (if you know): _____

    (b) Date of sentencing: _2-26-2020_

3.  Length of sentence: _120-months_

4.  Nature of crime (all counts): _21 U.S.C. Sections 841(A)(1), 846_




5.  (a) What was your plea? (Check one)

    (1) Not guilty ☐    (2) Guilty ☒    (3) Nolo contendere (no contest) ☐

6.  (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?



    _Violation 21 U.S.C 841(A)(1), 846_

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury ☐    Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☒

Page 2 of 13

AO 243 (Rev. 09/17)

8. Did you appeal from the judgment of conviction?     Yes ☐     No ☑

9. If you did appeal, answer the following:

    (a) Name of court: _MIDDLE DISTRICT of PENNsylvania. PA_

    (b) Docket or case number (if you know): _1:17-CR-00222-001_

    (c) Result: _____

    (d) Date of result (if you know): _____

    (e) Citation to the case (if you know): _____

    (f) Grounds raised:

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☑

       If "Yes," answer the following:

       (1) Docket or case number (if you know): _____

       (2) Result: _____

       (3) Date of result (if you know): _____

       (4) Citation to the case (if you know): _____

       (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐     No ☑

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: _____

       (2) Docket or case number (if you know): _____

       (3) Date of filing (if you know): _____

(4)  Nature of the proceeding: _____

(5)  Grounds raised: _____

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☒

(7)  Result: _____

(8)  Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1)  Name of court: _____

(2)  Docket of case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of the proceeding: _____

(5)  Grounds raised: _____

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐      No ☒

(7)  Result: _____

(8)  Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:      Yes ☐      No ☒

(2)  Second petition:     Yes ☐      No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** <u>Ineffective Asst. of Counsel; Counsel Allowed Petitioner to be sentenced outside the Actual statue of Conviction.</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Recent Decisions and change in the law eliminates claims proffered by the Gov't of Relevant (or Actual) conduct to be used for Enhancement purposes.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

Ineffective Asst. of Counsel, neglection of understanding new changes in the language of the law and statue.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4)  Did you appeal from the denial of your motion, petition, or application?

    Yes ☐     No ☒

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

    Yes ☐     No ☒

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: *Ineffective Asst. of Counsel.*

**GROUND TWO:**  *Ineffective Asst. of Counsel; Counsel Allowed Petitioner to be sentenced based on a PSR Report that did not have sufficient indicia of Reliability...*

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

*The Record proves the failings of Counsel causing "Harmful Plain Errors"; Prejudiced Petitioner when the Court adopted a PSR Report that did not have sufficient indicia of Reliability to support its Probable Accuracy leading to a 5th Amendment (as well as 6th Amendment) violations.*

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

    Yes ☐     No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

*Ineffective Asst. of Counsel, neglection of Professional norms causing harmful Errors, when not understanding changes in Laws and Statues*

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: *Ineffective Asst. of Counsel*

**GROUND THREE:** _Ineffective Asst. of Counsel; Counsel Allowance to have Petitioner sentenced outside National (Disparity) correct Guidelines similar to his charge_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Court's multiple Errors cumulatively speaking, caused by Counsel violated Petitioner's 5th/6th Amendment Rights, when Petitioner was illegally sentence to an incorrect Guidelines Range.

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☒

    (2) If you did not raise this issue in your direct appeal, explain why:

        Ineffective Asst. of Counsel, Lack of understanding of the FRAP's when it came to sentencing Disparity (National)

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☒

    (2) If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

    _____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☒

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☒

    (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:   *Ineffective Asst. of Counsel*

_____

**GROUND FOUR:**   *NONE*

_____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):



(b)  **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes [  ]   No [X]

(2)   If you did not raise this issue in your direct appeal, explain why:

*NONE*

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes [  ]   No [X]

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

Yes [ ]      No [X]

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes [ ]      No [X]

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes [ ]      No [X]

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: *NO GROUND*

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

*All Grounds ARE newly Presented Due to Ineffective Asst of Counsel.*

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?     Yes ☐     No ☑

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

   (a) At the preliminary hearing:

   _Kristine Wisenburger_

   (b) At the arraignment and plea:

   (c) At the trial:

   (d) At sentencing:

   (e) On appeal:

   _PRO SE_

   (f) In any post-conviction proceeding:

   _PRO SE_

   (g) On appeal from any ruling against you in a post-conviction proceeding:

   _PRO SE_

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☐     No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐     No ☑

   (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

   (b) Give the date the other sentence was imposed:

   (c) Give the length of the other sentence:

   (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☑     No ☐

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Motion is timely filed per FRAP!

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255,
paragraph 6, provides in part that:
   A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run
   from the latest of —
       (1)   the date on which the judgment of conviction became final;
       (2)   the date on which the impediment to making a motion created by governmental action in violation of
       the Constitution or laws of the United States is removed, if the movant was prevented from making such a
       motion by such governmental action;
       (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has
       been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral
       review; or
       (4)   the date on which the facts supporting the claim or claims presented could have been discovered
       through the exercise of due diligence.

Therefore. movant asks that the Court grant the following relief: "Reduction" of Time and Supervised Release to the Correct (as a matter of laws) to 57-months.

or any other relief to which movant may be entitled.

NONE
_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____5-26-2020_____ .
(month, date, year)

Executed (signed) on ___MAY-26th, 2020___ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Jose Roldan - Quinones
No: 31917-069
LSCI Allenwood Low
P.O. Box 1000
White Deer, PA 17887

PER _____
DEPUTY CLERK
MAY 29 2020
RECEIVED
HARRISBURG, PA

$38.46



To Clerk of court Middle
District of Pennsylvania
228 Walnut street
Harrisburg, PA 17108-9998

7039 2280 0000 7074 1020

CERTIFIED MAIL

U.S. POSTAGE PAID
FCM LG EN
WHITE DEER, PA
17887
MAY 28, 20
AMOUNT
$0.00
R2305K136972-08

1000

17108

Legal Mail